DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Wendy Mack, appeals the decision of the Lorain County Court of Common Pleas, which granted judgment in favor of appellees, Dr. John Krebs ("Dr. Krebs") and the Center for Orthopedic, Plastic and Reconstructive Surgery ("Center"). This Court affirms.
 I. {¶ 2} In August of 1997, appellant fell at work and suffered an injury to her left knee. She went to the emergency room at Elyria Memorial Hospital and was diagnosed with a dislocated knee. After the emergency room doctor relocated her knee, he told her to visit Dr. Hassler at the Center. In September of 1997, appellant visited Dr. Hassler and he determined her x-rays showed she had a fractured patella and loose bone fragments in her left knee. Dr. Hassler had his colleague, Dr. Krebs, examine appellant's knee. After his examination, Dr. Krebs told appellant surgery was needed to remove the loose bone fragments and that she may need additional surgery to correct her anatomically malaligned knee.
 {¶ 3} Dr. Krebs ordered additional tests on appellant's knee to further evaluate her injuries and determine the extent of surgery necessary to repair her knee. Upon reviewing those tests, Dr. Krebs decided that an arthroscopy was needed to remove the loose bone fragments in appellant's knee. Dr. Krebs also determined a lateral release and a tibial tubercle transfer, procedures which surgically move the kneecap so that it "tracks" properly on the knee, were needed to repair appellant's injuries. Dr. Krebs explained his findings to appellant and she decided to have the surgery and signed a written consent form authorizing him to perform the surgery.
 {¶ 4} On September 24, 1997, appellant signed a second consent form for the surgical procedures and Dr. Krebs performed them on her knee that day in the hospital. Dr. Krebs utilized a technique known as the Fulkerson procedure when he performed the tibial tubercle transfer on appellant's knee. After the surgery, appellant underwent physical therapy. However, her condition worsened at times and medical tests revealed appellant developed significant atrophy of her left thigh muscle.
 {¶ 5} In May of 1998, appellant visited Dr. Alan Davis, who took x-rays of her knee and recommended additional physical therapy for her. In September of 1998, appellant sought the opinion of Dr. William Bohl, who recommended she undergo a second tibial tubercle transfer on her knee. Appellant proceeded to have Dr. Bohl perform this second surgery. Despite both surgeries, appellant continued to experience pain in her left knee, which resulted in a limitation of her activities.
 {¶ 6} In 2001, appellant filed a medical malpractice action against appellees. The case proceeded to a jury trial. On September 17, 2002, the jury returned a verdict in favor of appellees and against appellant and the trial court journalized the judgment. Appellant filed motions for JNOV and/or a new trial and the trial court denied both motions.
 {¶ 7} Appellant timely appealed, setting forth three assignments of error for review.
 II. FIRST ASSIGNMENT OF ERROR
"The Trial Court Erred In Denying Appellant Mack's Motion For Judgment Notwithstanding The Verdict And/Or Motion For New Trial."
 {¶ 8} In her first assignment of error, appellant argues the trial court erred in denying her motions for JNOV and /or a new trial. Appellant specifically presents this argument with regard to her informed consent claim. This Court disagrees.
"Our standard of review of a trial court's denial of a motion for JNOV is the same as that applicable to a motion for a directed verdict. Posinv. A.B.C. Motor Court Hotel (1976), 45 Ohio St.2d 271, 275. Whether a trial court properly granted or denied a motion for directed verdict presents a question of law, which we review de novo. Schafer v. RMSRealty (2000), 138 Ohio App.3d 244, 257, appeal not allowed (2000),90 Ohio St.3d 1472. Civ.R. 50(A)(4) provides:
"`When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.'
"A motion for a directed verdict tests the sufficiency of the evidence, not the weight of the evidence or the credibility of witnesses. Wagner v. Roche Laboratories (1996), 77 Ohio St.3d 116,119-120. In ruling on a motion for a directed verdict, the trial court must construe the evidence most strongly in favor of the non-moving party. Posin, 45 Ohio St.2d at 275. When the party opposing the motion has failed to produce any evidence on one or more of the essential elements of a claim, a directed verdict is appropriate. Hargrove v. Tanner
(1990), 66 Ohio App.3d 693, 695. However, where there is substantial evidence upon which reasonable minds may reach different conclusions, the motion must be denied. Posin, 45 Ohio St.2d at 275." Falkner v.Para-chem, 9th Dist. No. 21288, 2003-Ohio-3155, at ¶¶ 9-10.
 {¶ 9} When reviewing the denial of a motion for a new trial, this Court must determine whether the trial court abused its discretion in overruling the new trial motion. Rohde v. Farmer (1970), 23 Ohio St.2d 82,87. This Court adheres to the standard that an abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency," Pons v. OhioState Med. Bd. (1993), 66 Ohio St.3d 619, 621, or an arbitrary, unreasonable or unconscionable attitude on the part of the court. Schaferv. Schafer (1996), 115 Ohio App.3d 639, 642.
 {¶ 10} In the instant case, appellant filed a medical malpractice case against appellees, claiming both a lack of informed consent and negligence in deciding to perform the surgery on appellant in September of 1997. At the close of the trial, the jury entered a verdict in favor of appellees. The jury received interrogatories to answer during its deliberations. Interrogatory No. 1 stated: "Do you find, by the greater weight of the evidence, that plaintiff Wendy Mack has proven her claim of lack of informed consent, and that the lack of informed consent proximately caused any injury and damages to the plaintiff?" The jury circled the answer "NO", dated their decision and each juror signed the interrogatory. Interrogatory No. 2 stated: "Do you find, by the greater weight of the evidence, that Dr. John Krebs was negligent, and that the negligence of Dr. Krebs was a proximate cause of any injury and damages in this case?" Again, the jury circled the answer "NO", dated their decision and each juror signed the interrogatory.
 {¶ 11} After the jury returned its verdict, the trial court entered an order journalizing its judgment in favor of appellees and against appellant. Appellant then filed her motions for JNOV and/or a new trial and the trial court denied both motions. Construing the evidence most strongly in favor of appellees, this Court finds the trial court properly denied appellant's motion for JNOV. The jury simply found that appellant did not prove her lack of informed consent claim and appellees were not negligent. The Ohio Supreme Court has described what must be established to show a lack of informed consent:
"(a) The physician fails to disclose to the patient and discuss the material risks and dangers inherently and potentially involved with respect to the proposed therapy, if any;
"(b) the unrevealed risks and dangers which should have been disclosed by the physician actually materialize and are the proximate cause of the injury to the patient; and
"(c) a reasonable person in the position of the patient would have decided against the therapy had the material risks and dangers inherent and incidental to treatment been disclosed to him or her prior to the therapy." Nickell v. Gonzalez (1985), 17 Ohio St.3d 136, 139.
 {¶ 12} Appellant alleges Dr. Krebs admitted that he failed to inform her of the alternative treatments available to her before she had realignment surgery on her left knee. Assuming Dr. Krebs made such admissions and the evidence showed Dr. Krebs breached his duty to appellant, that evidence alone does not justify granting a motion for JNOV or a new trial where proof of the remaining elements of a lack of informed consent claim remains to be shown in the case. This Court notes that, due to the combined nature of the interrogatories presented to the jury, we cannot presume to know how the jury believed appellant failed to prove her lack of informed consent claim. The jury did not state that appellee failed, specifically, to establish part (a) or part (b) or part (c), any combination of the parts, or all three of the required parts listed above in order to show lack of informed consent. Rather, the jury answered the compound interrogatories as they were presented, and they found appellant's evidence did not establish a lack of informed consent and appellees were not negligent. Appellant's counsel agreed to the form of these interrogatories before they were presented to the jury and he did not object to or request further explanation for the jury's answers to the compound interrogatories at trial. In light of these facts, this Court finds that the trial court properly denied appellant's motion for JNOV. Moreover, we cannot find that the trial court abused its discretion in denying appellant's alternative motion for a new trial in this case. Appellant's first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR
"The Trial Court Erred In Denying Appellant Mack The Opportunity To Testify In Rebuttal When There Was No Reasonable Basis To Anticipate The Unexpected And Material Testimony Of Appellee Krebs, M.D."
 {¶ 13} In her second assignment of error, appellant argues the trial court erred in denying her the opportunity to testify in rebuttal to the testimony of Dr. Krebs. This Court disagrees.
 {¶ 14} Appellant's assertion of trial court err requires us to review this assignment of error under an abuse of discretion standard. This Court has held that "[t]he proper scope of rebuttal testimony lies within the sound discretion of the trial court. Thus, a trial court's decision regarding the scope of rebuttal testimony will not be reversed unless the trial court's decision was unreasonable, arbitrary, or unconscionable." (Citations omitted.) In re Sadiku (2000),139 Ohio App.3d 263, 267.
 {¶ 15} Appellant claims the trial court denied her the opportunity to give rebuttal testimony at trial. However, after careful review of the record, this Court finds that the trial court did not deny any such request from appellant. The record reveals that, at one point during trial, appellant's counsel stated that he intended to call appellant for rebuttal testimony and appellees' counsel responded with an objection. At that time, the judge discussed his general perspective concerning rebuttal testimony in relation to testimony provided in a party's case-in-chief, stated there were no hard and fast rules regarding rebuttal testimony, and informed the parties that he would make his decisions concerning rebuttal testimony on a question-by-question basis. Thereafter, appellant's counsel called appellee as a rebuttal witness, but did not call appellant to take the stand to provide rebuttal testimony. Upon completion of appellee's rebuttal testimony, the judge and appellant's counsel had the following conversation on record:
"THE COURT: Any further rebuttal witnesses, counsel?
"MR. JACKSON: No, Your Honor.
"THE COURT: All right. Then the Plaintiff completely rests at this point in time?
"MR. JACKSON: Yes, Your Honor."
 {¶ 16} This Court finds that appellant's counsel never called appellant to take the witness stand and provide rebuttal testimony in the case. Consequently, the trial court had no opportunity to use its discretion and deny such a request. Appellant's second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR
"The Trial Court Erred In Refusing To Treat Dr. Fulkerson's Writings As A Learned Treatise Under Evidence Rule 706."
 {¶ 17} In her third assignment of error, appellant argues the trial court erred in refusing to treat Dr. Fulkerson's writings as a learned treatise under Evid. R. 706. This Court disagrees.
 {¶ 18} Again, appellant's assertion of trial court err requires this Court to review this assignment of error under an abuse of discretion standard.
 {¶ 19} Evid.R. 706 provides the following:
"Statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art are admissible for impeachment if the publication is either of the following:
"(A) Relied upon by an expert witness in reaching an opinion;
"(B) Established as reliable authority (1) by the testimony or admission of the witness, (2) by other expert testimony, or (3) by judicial notice.
"If admitted for impeachment, the statements may be read into evidence but shall not be received as exhibits."
 {¶ 20} Appellant argues the trial court should have granted her numerous requests to declare the writings of Dr. Fulkerson, specifically his book titled Disorders of the Patellofemoral Joint, learned treatises under Evid.R. 706. Appellant claims the trial court needed to declare the writings learned treatises so that the jury would have understood Dr. Fulkerson's writings were a reliable authority regarding knee realignments, and that "all medical writings regarding knee alignments" are not "on an equal footing." However, Evid.R. 706 clearly states that any statements from learned treatises can only be admitted for impeachment purposes and not substantively in a case. Therefore, appellant could not have used the writings as substantive evidence concerning the weight to be given to Dr. Fulkerson's views on knee realignments versus other medical writings on the subject. "Moreover, the substance of the treatise may be employed only to impeach the credibility of an expert witness who has relied upon the treatise, *** or has acknowledged its authoritative nature." (Citations omitted.) Stinson v.England (1994), 69 Ohio St.3d 451, 458. In this case, Dr. Krebs testified that he had not read the specific book that appellant wanted the court to declare a learned treatise at trial. In light of the above law and facts, this Court cannot find that the trial court abused its discretion when it refused to treat Dr. Fulkerson's writings as a learned treatise under Evid.R. 706. Appellant's third assignment of error is overruled.
 III. {¶ 21} Accordingly, appellant's three assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
WHITMORE, J., BATCHELDER, J., CONCUR.