OPINION
{¶ 1} Plaintiffs-appellants, John Stafford, Sr. ("Stafford"), his wife Donna, their son John, and their daughter Shannon, appeal a decision of the Warren County Court of Common Pleas granting a $7,500 judgment in favor of John but otherwise granting judgment in favor of defendants-appellees, Aces Eights Harley-Davidson, L.L.C., Raymond Phipps, and David Reagan, in a personal injury action.
 {¶ 2} On April 6, 2001, an altercation occurred at the Aces 
Eights Harley-Davidson Dealership in Mason, Ohio. Evidence presented during a jury trial showed that on that day, Aces 
Eights was conducting a large event designed to draw people into the store. WEBN, a local radio station, was broadcasting from the store, and Pete Rose was signing autographs. Several hundred people attended the event throughout the afternoon, including families with children. Around 6 p.m., appellants walked into the store to look at motorcycles. Appellant Stafford approached marketing/advertising manager Anne Shedlock and inquired about motorcycles for sale. Shedlock responded by explaining the store's unusual marketing strategy. At the time, the store sold motorcycles at lower prices than other local dealerships by use of a lottery system. Potential buyers placed their names into a drawing for motorcycles they were interested in buying. When a name was drawn, that customer had the option of purchasing the motorcycle. The parties do not dispute the foregoing. By contrast, the parties presented two diametrically opposed versions as to the parties' behavior during this exchange and what happened next.
 {¶ 3} According to appellants' version of the events, Shedlock was rude to Stafford. While he was explaining the lottery system to his son, Shedlock told them that if they did not like it they could leave. Soon after, Stafford observed Shedlock use a walkie-talkie radio. Shedlock then approached Stafford, told him she felt threatened by his presence, and asked him to leave. Stafford stated he remained calm and polite and denied using any profanity at any time. Stafford did not leave the store but instead asked questions. In a matter of minutes, he was aggressively confronted by appellee David Reagan, the store's sales manager, who told him "to get the f *** out of the store." Reagan then bumped Stafford with his chest a couple of times. Eventually, other employees of the store surrounded Stafford and his family.
 {¶ 4} Stafford testified that an employee of the store then grabbed him from behind in a choke hold and started dragging him backwards. Soon after, two other employees grabbed his arms and tried to put them behind his back. Stafford was punched in the head several times and kicked in the knees. Meanwhile, Reagan was choking John who was restrained by two employees. Soon after, appellee Raymond Phipps, the owner of the store, came running to John and punched him in the face twice. Stafford's wife Donna and his daughter Shannon were manhandled by employees of the store. Eventually, appellants were "thrown out" of the store. John denied using any profanity at any time or punching or choking Reagan, Phipps, or any employee. As a result of the altercation, Stafford suffered an umbilical hernia and a frozen shoulder which both required surgery; John suffered a laceration in his mouth and a swollen cheek; Shannon suffered bruises on one of her arms; and Donna suffered injuries "similar to rug burns" on her face, chin, and ears.
 {¶ 5} According to appellees' version[1] of the events, during Shedlock's explanation of the store's lottery system, Stafford was aggressive with Shedlock and called her a "bitch." After Shedlock told Reagan she felt threatened by Stafford, Reagan politely asked Stafford to leave the store. Stafford made derogatory comments about the lottery system using profanity. Reagan again asked Stafford to leave the store. John then referred to Reagan as a "fat fuck." Stafford and John were eventually walking towards the store front doors when Stafford turned around and started again making derogatory comments about the lottery system. At that point, Reagan, via walkie-talkie, asked Phipps and David Bull, an employee, to come to the front of the store immediately. In addition to Phipps and Bull, other employees responded as well and tried to escort Stafford and his family out of the store. A scuffle ensued during which John grabbed Phipps' throat. Phipps then pushed John off and pushed him again. Appellants were eventually escorted out of the store.
 {¶ 6} Reagan denied bumping Stafford with his chest, having any physical contact with him, or using profanity. Reagan, however, admitted having John in a headlock outside of the store. Phipps denied any physical contact with Stafford, Donna, or Shannon, or punching John in the face. Likewise, Reagan and an employee of WEBN denied Phipps punched John. Phipps stated that if his hand came into contact with John's face, it was purely accidental.
 {¶ 7} Appellants filed a complaint against Aces Eights, Phipps, and Reagan alleging, inter alia, battery and intentional infliction of emotional distress, and seeking compensatory damages as well as $5 million in punitive damages. In their answer, appellees raised trespass as a counterclaim, but did not list it as an affirmative defense. Appellees claimed that once appellants were asked to leave the store by employees of Aces 
Eights, they were no longer business invitees but trespassers. In August 2004, eight months before trial, appellees voluntarily dismissed their trespass counterclaim. A week before trial, appellees filed appellants' answers to interrogatories and request for admissions. The request for admissions asked Stafford and John to admit they were asked by an employee of the store to leave the premises, they did not leave the premises upon being requested to do so, and they were physically forced out of the store by an employee.
 {¶ 8} The jury trial was held in April 2005. During opening arguments, appellees' attorney told the jury that once appellants were asked to leave the store but refused to do so, they had become trespassers and that the owner and employees of the store had "the right to use whatever reasonable force necessary to eject a person who becomes a trespasser." Appellants did not object. At the conclusion of the trial but before jury instructions, appellants objected to a trespass jury instruction proposed by appellees. Appellants argued that appellees' voluntary dismissal of their trespass counterclaim and their failure to list trespass as an affirmative defense operated as "an absolute waiver that [was] not subject to amendment or modification under Civil Rule 15." Appellants also argued that to instruct the jury on trespass would be prejudicial.
 {¶ 9} Nonetheless, the next day, the trial court instructed the jury on trespass as follows: "Defendants assert the affirmative defense of trespass. A trespasser is a person who enters and remains on the property of another without permission, either expressed or implied * * *. * * * Th[e] right to use reasonable force to eject a trespasser [is] a defense to a claim of battery. Therefore, if you find by a preponderance of the evidence that plaintiff or plaintiffs was a trespasser at Aces 
Eights * * * and that the defendant or defendants used reasonable force to eject plaintiff or plainti[ffs] after requesting plaintiffs to leave, you should find in favor of the defendants."
 {¶ 10} By agreement of counsel, interrogatories submitted to the jury served as both verdict forms and interrogatories. With regard to each appellant, the interrogatories asked the jury: "Do you find that [appellant] has proven by a preponderance of the evidence that the Defendants committed a battery against [him or her] and that the defenses to battery, as instructed by the Court, do not apply AND that [he or she] suffered injury or damage which was the direct and proximate result of the Defendants' conduct?" The interrogatories provided only space to answer "Yes" or "No." The jury returned a $7,500 verdict in favor of John on his battery claim but found in favor of appellees regarding John's emotional distress claim. The jury returned verdicts in favor of appellees on all of the claims of Stafford, Donna, and Shannon. The jury also found that appellants were not entitled to punitive damages. A judgment entry was filed accordingly.
 {¶ 11} Appellants appeal and raise the following assignments of error:
 {¶ 12} Assignment of Error No. 1:
 {¶ 13} "THE TRIAL COURT ERRED IN INSTRUCTING THE JURY ON THE ISSUE OF `TRESPASS.'"
 {¶ 14} Assignment of Error No. 2:
 {¶ 15} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION TO AMEND THE RESPONSIVE PLEADINGS OF THE APPELLEES; INSTRUCTING THE JURY ON AN AFFIRMATIVE DEFENSE WHICH WAS VOLUNTARILY WAIVED BY THE APPELLEES."
 {¶ 16} At the heart of both assignments of error is appellants' argument that because appellees failed to assert trespass as an affirmative defense in their original answer, in an amended answer, or by motion, and voluntarily dismissed their trespass counterclaim, appellees effectively waived any claim to the defense of trespass at trial. Appellants contend that the trial court impliedly amended appellees' answer when it instructed the jury on trespass. Appellants argue that such instruction was prejudicial because there was no testimony at trial that appellants were considered trespassers while at the store, and because appellants' presentation of their case at trial was based upon the absence of a trespass defense. Appellants assert that the instruction caused significant confusion for the jury as evidenced by a verdict in which John was not considered a trespasser but Stafford and the rest of his family were.
 {¶ 17} It is undisputed that appellees failed to assert trespass as an affirmative defense in either their original answer or an amended answer; voluntarily dismissed their trespass counterclaim before trial; and failed to move the trial court before, during, or after the trial to amend their pleadings.
 {¶ 18} Civ.R. 8(C) "requires a party to set forth any affirmative defense in a responsive pleading. Failure to do so may waive the right to present evidence at trial on that defense. * * * In the real world, however, failure to plead an affirmative defense will rarely result in a waiver." Hoover v.Sumlin (1984), 12 Ohio St.3d 1, 5. Affirmative defenses, other than those specified in Civ.R. 12(B), are waived if not raised in a pleading, pursuant to Civ.R. 8(C), or an amended pleading, pursuant to Civ.R. 15. Jim's Steak House, Inc. v. Cleveland,81 Ohio St.3d 18, 20, 1998-Ohio-440.
 {¶ 19} Civ.R. 15(B) allows for the amendment of pleadings to conform to evidence presented at trial and provides:
 {¶ 20} "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect the result of the trial of these issues. If evidence is objected at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."
 {¶ 21} Thus, under Civ.R. 15(B), a trial court may allow a party to amend pleadings, even after the trial, to add an affirmative defense raised by the evidence at trial where the affirmative defense is tried with the express or implied consent of the parties and/or where the other party will not be unfairly prejudiced. See Hoover; Telmark, Inc. v. Liff (Sept. 21, 1998), Madison App. No. CA98-01-004. "The rule expresses a liberal policy toward the allowance of amendments * * * [and] was promulgated to provide the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties."Hall v. Bunn (1984), 11 Ohio St.3d 118, 121. The decision whether to grant leave to amend pleadings rests within the sound discretion of the trial court. Telmark.
 {¶ 22} Appellants assert that the trial court violated Civ.R. 15(B) when it sua sponte amended the pleadings, rather than upon a motion by appellees. We disagree. While Civ.R. 15(B) states that amendment of the pleadings "may be made upon motion of any party at any time," it does not prohibit a trial court from sua sponte amending pleadings under Civ.R. 15(B), and appellants have not cited any authority in support of their assertion. See Stateex rel. Celebrezze v. Tele-Communications, Inc. (C.C. 1990),62 Ohio Misc.2d 405 (pleadings sua sponte amended under Civ.R. 15[B] by trial court); Kellermyer, Inc. v. XIJ Corp. (Feb. 25, 1997), Defiance App. No. 4-96-24 (same). In addition, failure to amend as provided in Civ.R. 15(B) "does not affect the result of the trial of these issues." Civ.R. 15(B).
 {¶ 23} After reviewing the record, we find that the issue of trespass was not tried with the express consent of the parties. Thus, the issue before this court is whether the issue of trespass was tried by the implied consent of the parties such that the trial court did not abuse its discretion when it amended the pleadings under Civ.R. 15(B) by instructing the jury on trespass.
 {¶ 24} "An implied amendment of the pleadings under Civ.R. 15(B) will not be permitted where it results in substantial prejudice to a party. Various factors to be considered in determining whether the parties impliedly consented to litigate an issue include: whether they recognized that an unpleaded issue entered the case; whether the opposing party had a fair opportunity to address the tendered issue or would offer additional evidence if the case were to be tried on a different theory; and, whether the witnesses were subjected to extensive cross-examination on the issue.
 {¶ 25} "Under Civ.R. 15(B), implied consent is not established merely because evidence bearing directly on an unpleaded issue was introduced without objection; it must appear that the parties understood the evidence was aimed at the unpleaded issue." State ex rel. Evans v. Bainbridge Twp.Trustees (1983), 5 Ohio St.3d 41, paragraphs one and two of the syllabus.
 {¶ 26} Upon reviewing the transcript of the proceedings in the trial court and the pleadings filed by the parties, we find that the defense of trespass was tried by the implied consent of the parties, and therefore, pursuant to Civ.R. 15(B), the issue must be treated as if it had been raised in the pleadings. Although appellees dismissed their trespass counterclaim several months before the trial, they filed appellants' answers to request for admissions a week before trial. In their answers, Stafford and John admitted they were asked by an employee of the store to leave the premises and that they were physically forced out of the store by an employee. They, however, denied that they did not leave the store upon being requested to do so.
 {¶ 27} During opening arguments, appellees' attorney specifically told the jury that once appellants were asked to leave the store but refused to do so, they had become trespassers and that the owner and employees of the store could "use whatever reasonable force necessary to eject a person who becomes a trespasser." While appellants did not object, they were certainly given notice of the defense of trespass and should have recognized its presence. See Admr. of Veterans Affairs v.Koryta (Dec. 12, 1991), Cuyahoga App. No. 58616 (where party made known, in its opening argument, that an issue was present in the case, and opposing party should have recognized its presence, and the opportunity to cross-examine on the issue was present, it was not erroneous for the trial court to allow the pleadings to be amended to conform to the evidence).
 {¶ 28} At trial, appellants all testified that they were asked to leave the premises but that they never had the opportunity to do so, that is, that events unfolded so quickly once they were surrounded by Phipps and the employees that they could not simply turn around and walk out on their own volition. Phipps and Reagan, in turn, testified that prior to the scuffle, Stafford and John were asked several times to leave the store, but that they would not leave the store and would argue instead, and that they had to be physically escorted out of the store. Asked how Stafford reacted to his request that he leave the store, Phipps testified: "They said * * * we don't have to get out of here, and I said, yes, you do, I'm the property owner and I'm asking you to leave right now, you're causing a disturbance." On cross-examination, Phipps testified he did not hear Stafford "say to Mr. Reagan not to touch them that they were leaving." Testifying on behalf of appellees, an employee of WEBN testified that Stafford was asked to leave, had an opportunity to leave, but instead refused to leave, and that during the scuffle, Stafford "was flailing * * * trying his best to stay in the building."
 {¶ 29} In light of all of the foregoing, we find that although the terms "trespassers" or "trespass" were not used during the testimony, the defense of trespass was nonetheless tried by the implied consent of the parties. Appellants, however, argue that they were prejudiced because (1) they were unable to adequately prepare their case to conform to the defense of trespass, (2) they "were left with no opportunity to present any counterpart to the amended pleadings," and (3) it clearly caused significant confusion for the jury as evidenced by the conflicting verdicts. We disagree.
 {¶ 30} While appellants may not have been able to prepare their case with regard to the defense of trespass as well as they would have wanted, they certainly had the opportunity during the trial to argue or cross-examine on this issue, especially following the references to appellants as trespassers made by appellees' attorney during opening arguments. With regard to appellants' inability to "present any counterpart to the amended pleadings," we note that Civ.R. 15(B) gives the objecting party the right to ask for a continuance. As the staff notes following Civ.R. 15(B) state, "If the opposing party, as a result of the amendment [under Civ.R. 15(B)], claims surprise or hardship, the court may grant a continuance." In the case at bar, while appellants objected to the trespass jury instruction partly on the ground of hardship, they never asked for a continuance. We also note that during closing arguments, appellants' attorney told the jury that the issue of trespass was a red herring since appellants had no opportunity to leave the store on their own volition.
 {¶ 31} Finally, with regard to the jury's conflicting verdicts, unlike appellants, we cannot say or presume that they were necessarily and solely the result of the trial court's amendment of the pleadings and trespass jury instruction. Appellants claim that the trespass instruction led the jury to conclude that John was not a trespasser but that Stafford, Donna, and Shannon were trespassers. Appellants' claim overlooks the fact that the verdict forms proposed a compound question to the jury.
 {¶ 32} By agreement of counsel, interrogatories submitted to the jury served as both verdict forms and interrogatories. With regard to each appellant, the interrogatories asked the jury: "Do you find that [appellant] has proven by a preponderance of the evidence that the Defendants committed a battery against [him or her] and that the defenses to battery, as instructed by the Court, do not apply AND that [he or she] suffered injury or damage which was the direct and proximate result of the Defendants' conduct?" The interrogatories provided only space to answer "Yes" or "No." The jury answered "yes" with regard to John but "no" with regard to Stafford, Donna, and Shannon.
 {¶ 33} Due to the compound nature of the interrogatories/verdict forms presented to the jury, it is possible that the jury could have concluded that (1) no battery was committed against Stafford, Donna, and Shannon, (2) that a battery was committed against them but that the defense of trespass applied, or (3) that a battery was committed against them, that the defense of trespass did not apply, but that they were not injured as a result. Appellants agreed to the form of these interrogatories/verdict forms before they were presented to the jury and did not request further explanation for the jury's answers to the compound questions at trial. See Mack v. Krebs,
Lorain App. No. 02CA008203, 2003-Ohio-5359; Stockman v. Biehle
(Mar. 28, 1988), Clermont App. No. CA87-09-076.
 {¶ 34} In light of all of the foregoing, we find that the trial court did not abuse its discretion when it amended the pleadings by instructing the jury on trespass. Appellants' first and second assignments of error are overruled.
 {¶ 35} Judgment affirmed.
Walsh, P.J., and Bressler, J., concur.
[1] Our statement of the facts under appellees' version intentionally does not include the testimony of Anne Shedlock, the store's marketing/advertising manager on the day of the altercation. During trial, the trial court struck her testimony in its entirety. The trial court found that because of a motorcycle accident she had between the day of the altercation and the jury trial, her recollection of the events on the day of the altercation was unreliable. While we decline to strike "the entire section entitled `Statements of the Facts'" in appellees' appellate brief as requested by appellants, we do strike the portion of appellees' "Statements of the Facts" referring to Shedlock's testimony.