[Cite as *State v. Nisley*, 2014-Ohio-981.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
HANCOCK COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,          CASE NO.  5-13-23

     v.

NATHAN A. NISLEY,               O P I N I O N

     DEFENDANT-APPELLANT.

Appeal from Hancock County Common Pleas Court
Trial Court No. 12-CR-281

Judgment Affirmed

Date of Decision:  March 17, 2014

APPEARANCES:

     *Scott B. Johnson* **for Appellant**

     *Mark C. Miller and Alex K. Treece*  **for Appellee**

**ROGERS, J.**

{¶1} Defendant-Appellant, Nathan Nisley, appeals the judgment of the Court of Common Pleas of Hancock County convicting him of attempted aggravated possession of drugs and sentencing him to 120 days in jail. On appeal, Nisley argues that the trial court committed the following errors: denying his presentence motions which, collectively, constituted a withdrawal of his guilty plea; and denying his motion for a second psychological evaluation prior to the sentencing hearing. Nisley also argues that he was denied effective assistance of counsel. For the reasons that follow, we affirm the trial court's judgment.

{¶2} On November 13, 2012, the Hancock County Grand Jury indicted Nisley on one count of aggravated possession of drugs in violation of R.C. 2925.11(A), a felony of the fifth degree.

{¶3} On December 12, 2012, Nisley was arraigned and was represented by his court appointed counsel, Zachary Barger. Nisley pleaded not guilty to the charge in his indictment. Although represented by counsel, Nisley filed a pro se "motion to quash" and a "motion to compell [sic]" on December 19, 2012. He also filed a pro se "motion for demurrer" on December 26, 2012.

{¶4} On January 18, 2013, at a pre-trial conference, Mr. Barger filed a motion to withdraw as counsel. The trial court granted this motion and granted

Case No. 5-13-23

Nisley a second court appointed attorney. The trial court and Nisley then had the

following relevant exchange:

> Trial Court: * * * But the law also provides that on this Court's own motion I can consider whether or not there needs to be an evaluation to determine if you are competent to proceed. And so --
>
> Nisley: That's a broken record too.
>
> Trial Court: I will be examining that here in the next day or so and making that decision. And if necessary, I'll have you transported to the Court Diagnostic and Treatment Center for an interview at least as to that determination.
>
> Nisley: Yeah, I've been in this Court three times in front of you, and all three times you sent me up there. It's becoming a broken record, but okay. Whatever you got to do.

Jan. 18, 2013 Tr., p. 18.

{¶5} On March 11, 2013, Nisley's second court appointed attorney filed a

motion for funds to hire an expert witness. On April 3, 2013, Nisley was ordered

to complete a competency evaluation at the Court Diagnostic and Treatment

Center.

{¶6} On April 26, 2013, the trial court received Nisley's competency

evaluation and found him competent to stand trial. Nisley and the State stipulated

to the report's admission and consideration by the court. The trial court and

Nisley had the following exchange regarding the report's admission:

> Trial Court: How do the parties wish to proceed then? If I read the report correctly, it was Dr. Forgac's opinion that Mr. Nicely [sic] is competent to stand trial.

-3-

State: State of Ohio would have no objection with the Court considering this evaluation as a Joint Exhibit and using this to determine that Mr. Nisley is competent to stand trial.

Trial Court: [Defense Counsel], what is your position?

Defense Counsel: We have no objection either, Your Honor.

Trial Court: All right. Is Defendant going to be seeking any other evaluations in this regard?

Defense Counsel: No, Your Honor.

Nisley: Hold on, sir.

Trial Court: Excuse me, Mr. Nisley, you need to consult with your attorney.

Defense Counsel: Your Honor, I think the position of my client is that he agrees that he's competent. But I think -- I don't know if it's out of a desire to delay the Court or desire to -- his bottom line is if the Court is satisfied with this report, I think he's willing to accept this report and this record only.

Trial Court: Are you willing to stipulate to its admission in consideration by the Court today?

Defense Counsel: Yes.

Nisley: Yes.

Apr. 26, 2013 Tr., p. 4-5. That same day, the trial court granted Nisley's motion for funds to hire an expert witness and ordered the Ohio Bureau of Criminal Identification and Investigation to fingerprint evidence in its possession.[1]

{¶7} On July 15, 2013, a change of plea hearing took place in this matter.[2] The State asked the trial court to amend the indictment to include the language of R.C. 2923.02(A), which would change the offense to attempted aggravated possession of drugs, a misdemeanor of the first degree. The trial court then had the following exchange with Nisley:

Q: Did you review both plea agreements?

A: I did.

Q: Did you discuss them both with [your defense counsel]?

A: We did.

Q: Do you have any questions about what they say at this point?

A: None.

Q: All right. Is anybody trying to force you into this decision this morning?

A: None.

Q: Has anybody made you any promises as to the outcome of your case?

---

[1] When Nisley was arrested, police officers found drugs near the passenger seat in the car where Nisley was seated. Nisley wanted to finger print the container where the drugs were found. However, it is not clear from the record if the finger print analysis was completed, and if so, what the results were.
[2] At this hearing, Nisley pleaded guilty in two separate cases: 2012-CR-281 and 2013-CR-139. Only 2012-CR-281 is the subject of this appeal.

A: None.

Q: As a matter of fact, I thought I heard [the State] say, and I wanted to confirm that with you, that there is not a sentencing agreement between the parties. So each would come in and argue what they believe the appropriate sentence should be.

A: Yes.

* * *

Q: Mr. Nisley, do you currently take any medicine?

A: I ain't taking none, no. Triaxodome and heart pills that don't work.

Q: Okay, but you're not taking anything at this time?

A: No.

Q: Do you have anything whatsoever in your system that would make it difficult for you to understand our proceedings today?

A: Not drugs wise.

Q: All right, what would make it difficult then?

A: Pain.

Q: You're in pain.

A: Oh, yes. Severe pain.

Q: What kind of pain are you in?

A: Muscular. Migraine to be exact.

Q: I understand. I know people that suffer from that. Are you in a position today where it's so difficult, the pain is so great you can't proceed?

A: That's everyday [sic], sir. But I still move on.

Q: Okay. My question is, today. Is the pain too great for you to proceed?

A: No. We can move on.

Q: And if it becomes a time during the proceedings where it is, would you let me know then?

A: I will.

* * *

Q: Let's talk then if the Court allows the amendment [to the indictment] what the penalty could be. Under Ohio law for a misdemeanor of the first degree, do you understand that I could send you to the Hancock County Jail for up to 180 days?

A: Yes.

Q: That I could fine you up to $1,000.

A: Yes.

Q: That I could order that you pay court costs.

A: Yes.

Q: Do you understand that the Court has the right to impose none of it, part of it, or all of those two sentences that I spoke of?

A: Yes.

Q: That I also have the authority, if I were to impose some of that time, to suspend it and place you on a term of probation or community control for up to 5 years.

A: Yes.

* * *

Q: One final area that I want to discuss with you that relates to all three of these cases, that is -- two cases, three counts I should say. If you offer pleas of guilty either to the original or to the amended forms of the offenses, do you understand that you are giving up your right to a trial?

A: Yes.

Q: As you sit here right now here in court I've not made a finding. That means you still have the presumption of innocence. So if you did wish to go to trial I want to make sure you understand that it's clear that the burden rests with the State of Ohio to prove your guilt in each of these cases.

A: Yes.

Q: And that's beyond a reasonable doubt. You have no burden. They have the burden.

A: Yes.

Q: That [your trial counsel] would have the right to act as your advocate in concert with you at your trial and he would be authorized, for example, to make arguments, challenge evidence, cross examine all the State's witnesses, issue subpoenas, if necessary, to compel the attendance of witnesses for your defense. Do you understand that?

A: Yes.

Q: You cannot be forced to testify against yourself, nor may your silence be used against you?

A: Yes.

Q: And at trial it can take one of two forms. It could either be a jury trial or a court trial. If we were to proceed on the felonies then we would impanel twelve jurors. If for some reason we might proceed on felonies and mixed with misdemeanors and tried misdemeanors, the law says they can be tried to eight people.

However, the important note in Ohio to discuss is that whether it be a misdemeanor trial to eight or a felony trial to twelve, in Ohio all of the jurors have to agree that you're guilty before you could be convicted.

A: Yes.

Q: Now, you're giving up those rights, Mr. Nisley?

A: Yes.

Jul. 15, 2013 Tr., p. 7-10, 12-13, 18-20.

{¶8} Nisley then asked to speak with his trial counsel in private and the trial court went off the record. When the court came back on the record, Nisley indicated that he was ready to proceed and subsequently signed the plea agreement in open court. Nisley also stated that he was "satisfied with [his] attorney's legal advice and counsel[.]" *Id*. at p. 18. The trial court found that Nisley made a "knowing, voluntary, and intelligent decision to withdraw his plea of not guilty and to the amended charge tender a plea of guilty." *Id.* at p. 23-24.

{¶9} Both parties asked for a presentence investigation report ("PSI"), and sentencing was scheduled for August 28, 2013. However, on August 28, Nisley became "violent" during the course of the sentencing hearing. Sept. 4, 2013 Tr.,

p. 4. Throughout the hearing Nisley was "profane" and "disruptive" and the trial court declined to sentence him at that time. *Id.* Further, the trial court noted:

> I am convinced that Mr. Nisley intentionally disrupt[ed] the proceedings as he does not wish to be sentenced in these matters. As I understand it, he was reasonably calm on his way over to the proceedings last week. Became disruptive while in court. I've been further advised on his way back he was literally laughing about what occurred, suggesting he was able to accomplish his goal of disrupting the proceeding and not proceeding to sentencing.
>         So I don't believe it's an issue of competence or mental illness necessarily, although he has shown difficulties in the past. * * * But what I observed in my assessment is that it was not mental illness, but his intentional conduct which gave rise to the necessity of continuing those proceedings.

*Id.* at p. 5-6.

{¶10} On September 4, 2013, Nisley filed a number of pro se motions with the trial court. He filed a motion for "request of medical care and evalution [sic]" stating that he was in so much physical pain that it was causing "mental status" problems. (Docket No. 65, p. 1). Nisley also filed a "conflict of interest" motion, alleging that his trial counsel did not have his best interests in mind and that his attorney was refusing to hospitalize him for his pain. Nisley also asked the court to discharge his second court appointed attorney. Nisley's other motions consisted of a "motion for contenuce [sic]", "change of venue", "request for charges", and a "conflict of interest" between himself and the trial court judge.

{¶11} A second sentencing hearing was also held on September 4, 2013. The trial court first addressed the motions Nisley filed. As to Nisley's request for

medical care, the trial court made a copy of the motion and directed the Sheriff to address Nisley's concerns. Further, the Deputy Sheriff stated that Nisley was getting his medical concerns addressed by the jail's medical staff and that he has a physician and nurse[3] who regularly visit with Nisley.

{¶12} As to the motions for "conflict of interest" the trial court, Nisely, and Nisley's defense counsel had the following relevant discussion:

> Defense Counsel: Your Honor, I just generally discussed this with [Nisley]. He never gave me a bases [sic] as to why he thought there was a conflict of interest. He keeps using the term conflict of interest when I don't really think that's the legal term he needs to use. I don't have any position on this. I would just defer to [Nisley].
>
> Trial Court: Mr. Nisley?
>
> Nisley: Well, really seems like my attorney Bozo over here, is brown nosing you. And the Prosecutor apparently is looking up to you. I feel like you have a conflict due to the fact that basically we've seen each other a little bit. This is what, the third time I'm standing before you? * * *
> I just really don't feel like my counsel is helping. I think you two are too good [of] friends for me to be getting a fair sentence and a fair plea bargain. [My defense counsel] did state that if I did not make a plea bargain with the 159 case, 13-CR-159 case, that I was going to get a lot of time. Like 18 months or something on two F5's and two M1's. I think that's a little hefty. And he stated that your position was that we have to make an example because of the jail being involved. And I think you're just too close to this.
>
> * * *

---

[3] While in custody, Nisley allegedly spit on a nurse who was trying to give Nisley his medications. This incident resulted in more criminal charges being filed against Nisley.

Trial Court: Well I don't believe I've ever told your counsel or the State of Ohio that I was going to demand a particular sentence. That's not my practice. * * *
More importantly, and as [the State] points out, there is a specific, very specific statutory procedure that requires an affidavit of disqualification be filed with the Chief Justice of the Ohio Supreme Court.

Sept. 4, 2013, p. 17-19. The trial judge then declined to recuse himself.

Regarding the performance of his trial counsel, Nisley stated:

Mainly there's [a] separate issue that go [sic] along with it, though. Mentioned in there is [trial counsel] is not doing his job for me. I didn't mind when I was making the plea bargain. I was satisfied at that timeframe. But if you remember, I did bring up the medication issue. You asked me if I was in so much pain that we should not continue. I felt so, but [trial counsel] told me to shut up and just go through it.

*Id.* at p. 20-21. The State then stated that Nisley's trial counsel has fought zealously, that it had not observed any unprofessional conduct, and that it did not believe removal would be appropriate. The trial court then denied Nisley's request to remove his second court appointed counsel and denied Nisley's remaining motions.

{¶13} The trial court then proceeded to sentencing. Nisley was sentenced to 120 days in jail and ordered to pay court costs. On September 6, 2013, the trial court filed a judgment entry, journalizing Nisley's conviction and sentence.

{¶14} Nisley timely appealed this judgment, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**THE TRIAL COURT ERRED IN DENYING DEFENDANT'S PRESENTENCE MOTIONS WHICH COLLECTIVELY CONSTITUED A WITHDRAWAL OF HIS GUILTY PLEA IN THAT HIS PLEA WAS NOT VOLUNTARY OR KNOWING IN THAT HE WAS IN SEVERE PAIN WHICH AFFECTED HIS JUDGMENT AND THE ABILITY TO UNDERSTAND WHAT HE WAS DOING.**

*Assignment of Error No. II*

**THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION FOR A SECOND PSYCHOLOGICAL EVALUATION PRIOR TO THE SENTENCING HEARING.**

*Assignment of Error No. III*

**THE COUNSEL FOR THE DEFENDANT PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL.**

*Assignment of Error No. I*

{¶15} In his first assignment of error, Nisley argues, in a convoluted manner, that collectively all his presentence motions constituted a motion to withdraw his guilty plea and that he should have been allowed to withdraw his guilty plea due to the fact he was in so much pain at the time of the change of plea hearing, it rendered his plea involuntary. We disagree.

{¶16} Crim.R. 32.1 provides in pertinent part that "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of

conviction and permit the defendant to withdraw his or her plea." While the general rule is that motions to withdraw guilty pleas made before sentencing are to be freely granted, the right to withdraw a guilty plea is not absolute. *State v. Xie*, 62 Ohio St.3d 521 (1992), paragraph one of the syllabus. The trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea. *Id.* The decision to grant or deny a motion to withdraw a guilty plea is within the sound discretion of the trial court and will not be disturbed on appeal, absent an abuse of discretion. *Id.* at paragraph two of the syllabus. A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *State v. Boles*, 187 Ohio App.3d 345, 2010-Ohio-278, ¶ 16-18 (2d Dist.).

{¶17} There are several factors that have been delineated by this and other courts to assist in our review of the trial court's determination to grant or deny a motion to withdraw a guilty plea, including: (1) whether the State will be prejudiced by withdrawal; (2) the representation afforded to the defendant by counsel; (3) the extent of the Crim.R. 11 hearing; (4) the extent of the hearing on the motion to withdraw; (5) whether the trial court gave full and fair consideration of the motion; (6) whether the timing of the motion was reasonable; (7) the reasons for the motion; (8) whether the defendant understood the nature of the

charges and potential sentences; and (9) whether the accused was perhaps not guilty or had a complete defense to the charge. *State v. Prince*, 3d Dist. Auglaize No. 2-12-07, 2012-Ohio-4111, ¶ 22; *State v. Leffler*. 3d Dist. Hardin No. 6-07-22, 2008-Ohio-3057, ¶ 11; *State v. Fish*, 104 Ohio App.3d 236, 240 (1st Dist.1995).

**{¶18}** Initially, we must note that we do not find that Nisley's presentence motions, viewed together, constituted a motion to withdraw his guilty plea. None of Nisley's presentence motions specifically asked the court to withdraw his guilty plea. In addition, Nisley had a court appointed attorney who never filed, or was asked to file, a motion to withdraw a guilty plea. The State correctly points out that throughout the entire proceedings, Nisley filed numerous pro se motions where he cited to the Ohio Revised Code, the United States Constitution, case law, and the Ohio Rules of Professional Conduct. It is apparent from the record, that despite Nisley's eccentric behaviors, he had a better understanding of the legal system than most defendants. Thus, if he wanted to withdraw his guilty plea, he would have filed a motion to withdraw, or at a bare minimum, specifically state that he wanted to withdraw his guilty plea in one of the presentence motions he did file with the court. However, even if we were to accept that all of Nisley's motions collectively constituted a motion to withdraw his guilty plea, we cannot find that the trial court abused its discretion in denying Nisley's motions.

{¶19} The record reveals that Nisley was afforded a full hearing, pursuant to Crim.R. 11, before he entered his guilty plea. In fact, on appeal Nisley does not argue that the trial court did not follow Crim.R. 11 when conducting his change of plea hearing. While Nisley did mention that he was in pain due to a severe migraine, the trial court repeatedly asked Nisley if he was okay to proceed with the hearing.

Q: What kind of pain are you in?

A: Muscular. Migraine to be exact.

Q: I understand. I know people that suffer from that. *Are you in a position today where it's so difficult, the pain is so great you can't proceed*?

A: That's everyday [sic], sir. But I still move on.

Q: Okay. My question is, today. *Is the pain too great for you to proceed?*

A: *No. We can move on.*

Q: And if it becomes a time during the proceedings where it is, would you let me know then?

A: I will.

Q: And I would also note for the record, [defense counsel], so far Mr. Nisley has answered each and every one of my questions appropriately. So it appears to me we can proceed. But *only he would know if the pain became so severe,* because those things are subjective. *If he let's* [sic] *me know we'll stop the proceedings.*

(Emphasis added.) Jul. 15, 2013 Tr., p. 9-10. Nisley never mentioned the pain again and never asked the court to stop the proceedings.

{¶20} Nisley was also afforded a full, impartial hearing on his presentence motions. Further, he was represented by a highly competent counsel. His trial counsel filed a motion for funds to hire an expert witness, had certain evidence tested for fingerprints, and was able to negotiate with the State to reduce a felony charge down to a misdemeanor.

{¶21} Nisley argues that the trial court abused its discretion by denying his motions because the State would not have been prejudiced if he would have been able to withdraw his guilty plea. However, Nisley's change of plea hearing occurred on July 15, 2013, and his presentence motions were not filed until September 4, 2013. Thus, Nisley waited over a month and a half before filing his motions. Further, Nisley's case had been pending since he was indicted in November of 2012. Nisley also disrupted his first sentencing hearing and the trial court had to continue the hearing to a later date. Looking at the entire record, it appears that Nisley was purposefully trying to delay the State from resolving his case.

{¶22} Nisley also contends that the trial court erred because he was "challenging his [guilty] plea because he was not guilty." Appellant's Br., p. 16. Nisley asserts that the container holding drugs was found in a car that he did not

own and was a passenger in; therefore, the State could not prove that he was in possession of the drugs. Although Nisley asserts his innocence on appeal, at the time of the change of plea hearing, the trial court asked if Nisley understood that he would be admitting to the offense of attempted possession of drugs, and Nisley said he understood. Further, it appears from the PSI that the State had an eye witness who saw Nisley with the container of drugs before he got into the car. Also, the container was found in the passenger side door compartment, right next to where Nisley was sitting. Thus, we cannot say that there is overwhelming evidence that Nisley is in fact innocent of the crime he pled guilty to.

{¶23} Since Nisley was afforded a full hearing pursuant to Crim.R. 11, was given a hearing on his presentence motions, and was represented by competent counsel, we cannot say the trial court abused its discretion when denying Nisley's presentence motions. *See State v. Sylvester*, 2d Dist. Montgomery No. 22289, 2008-Ohio-2901, ¶ 19 (finding that the trial court did not abuse its discretion in denying defendant's motion to withdraw a guilty plea when: (1) accused was represented by competent counsel; (2) accused was afforded a full hearing pursuant to Crim.R. 11 before pleading guilty; (3) accused was given a complete and impartial hearing on his motion to withdraw a guilty plea; and (4) the trial court gave its full and fair consideration to the plea withdrawal request).

{¶24} Accordingly, Nisley's first assignment of error is overruled.

### *Assignment of Error No. II*

**{¶25}** In his second assignment of error, Nisley argues that the trial court erred in denying his request for a second psychological evaluation prior to sentencing. We disagree.

**{¶26}** Pursuant to R.C. 2945.37(B):

> In a criminal action in a court of common pleas * * * the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before trial has commenced, the court shall hold a hearing on the issue as provided in this section. If the issue is raised after the trial has commenced, the court shall hold a hearing on the issue only for good cause shown or on the court's own motion.

Further, a defendant is presumed to be competent and it is the defendant's burden to prove, by a preponderance of the evidence, that because of his present mental state, he is incompetent to stand trial. R.C. 2945.37(G). If the issue of the defendant's competence is raised, "the court *may* order one or more evaluations of the defendant's present mental condition * * *." (Emphasis added.) R.C. 2945.371(A). Thus, the wording of the statute indicates that it is within the discretion of the trial court to order a competency evaluation. *State v. Bailey*, 90 Ohio App.3d 58, 67 (11th Dist.1992).

**{¶27}** We find no abuse of discretion in the trial court's refusal to order a second competency evaluation. Although Nisley argues that he was in so much pain that it affected his mental status, we cannot find any evidence in the record to

support this conclusion. Nisley and the trial court had intelligent conversations and Nisley never acted as though he did not understand the nature of the proceedings or the charges against him while in front of the trial court. Further, Nisley stipulated to the first competency evaluation, which stated that he was competent to stand trial. It was Nisley's burden to establish that he was incompetent by a preponderance of the evidence. We cannot find that he met this burden, and therefore, the trial court did not abuse its discretion by denying Nisley's request for a second competency evaluation.

{¶28} Accordingly, we overrule Nisley's second assignment of error.

### *Assignment of Error No. III*

{¶29} In his third assignment of error, Nisley argues that he was denied effective assistance of counsel. We disagree.

{¶30} "A guilty plea waives all appealable orders except for a challenge as to whether the defendant made a knowing, intelligent, and voluntary acceptance of the plea." *State v. Ramsey*, 3d Dist. Marion No. 9-10-55, 2012-Ohio-134, ¶ 15, citing *State v. Spates*, 64 Ohio St.3d 269, 272 (1992). Thus, in order to prove that Nisley received ineffective assistance of counsel, he must show that: (1) his trial counsel's performance was deficient; and (2) that but for his trial counsel's deficiencies, there is a reasonable probability that he would not have pleaded guilty. *Xie*, 62 Ohio St.3d at 524.

{¶31} At Nisley's change of plea hearing, the trial court specifically asked him whether he was "satisfied with your attorney's legal advice and counsel" and Nisley replied that he was. Jul. 15, 2013 Tr., p. 18. Nisley also answered affirmatively that his trial counsel had gone over and explained the plea agreement with him. *Id.* at p. 7. Nisley repeated these statements to the trial court at his sentencing hearing where he admitted that he was "satisfied" with his trial counsel at the time of his change of plea hearing. Sept. 4, 2013 Tr., p. 21. Further, we note that Nisley entered a plea as part of a negotiated plea agreement, wherein the State agreed to reduce his felony charge to a misdemeanor. As a result of this plea, Nisley was no longer facing the possibility of serving time in prison.

{¶32} Nisley alleges that his trial counsel "told him that he must take the plea offer, else he would get larger sentences in other pending cases." Appellant's Br., p. 17. Nisley also contends that his trial counsel told him to "shut up and just go through it" after he complained to his counsel about the pain he was in. Sept. 4, 2013 Tr., p. 21. Besides Nisley's self-serving statements, there is no evidence that Nisley's trial counsel actually said these things to Nisley. Further, even if Nisley's trial counsel stated that he might get a larger sentence if he did not accept the plea deal, it is evident that he was giving Nisley a realistic and fair assessment of his possibilities if he proceeded to trial. If Nisley was found guilty of a felony of the fifth degree at trial, he could have been sentenced up to 12 months in prison,

whereas if he pleaded guilty to a misdemeanor of the first degree the maximum sentence he could serve would be 180 days in jail. *See* R.C. 2929.14(A)(5); 2929.24(A)(1).

**{¶33}** Therefore, we find Nisley's allegation that his trial counsel somehow forced him to enter a guilty plea is unsupported by the record in this case.

**{¶34}** Accordingly, we overrule Nisley's third assignment of error.

**{¶35}** Having found no error prejudicial to Nisley in the particulars assigned and argued, we affirm the trial court's judgment.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and SHAW, J., concur.**

**/jlr**