[Cite as *Weltin v. Collins*, 2020-Ohio-296.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY


Mark Weltin dba Weltin
Heating & Air Conditioning

Court of Appeals No. S-19-019

     Appellee

Trial Court No. 18 CVI 1134

v.

Kathie M. Collins

**DECISION AND JUDGMENT**

     Appellant

Decided: January 31, 2020

* * * * *

Joseph F. Albrechta, John A. Coble and Jessica M. Bartolozzi,
for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Defendant-appellant, Kathie M. Collins, appeals the March 20, 2019 judgment of the Fremont Municipal Court, Small Claims Division, granting judgment in favor of plaintiff-appellee, Mark Weltin dba Weltin Heating & Air Conditioning ("Weltin"). Weltin has not filed a brief in this action. For the reasons that follow, we affirm the trial court judgment.

## I. Background

{¶ 2} Mark Weltin filed suit in small-claims court against Kathie Collins ("Collins") after Collins failed to pay for a central air-conditioning unit that Weltin installed in her home. Weltin claimed that he installed the unit at Collins's request after giving her a verbal quote of $4,500, but she refused to pay, instead claiming that she had been quoted a different amount. Collins filed a counterclaim in which she denied that she and Weltin had "a verbal quote agreement" for $4,500 and alleged that Weltin took her existing air conditioning unit and component parts and refused to return them. She sought damages of $450.00.[1] The case proceeded to trial at which the following facts were developed.

{¶ 3} Collins owns a home in Fremont, Ohio. The house, which she purchased in foreclosure, was stripped of its copper pipes before she purchased it, thereby rendering the home's air-conditioning unit inoperable. In May of 2018, Collins's father, Edgil Collins ("Edgil"), was shopping at Famous Supply, a business that supplies materials to building professionals. There he encountered Weltin, the owner of Weltin Heating & Air Conditioning. Edgil told Weltin about the absence of a functioning air-conditioning unit in his daughter's home and asked if he would be interested in taking a look at it. Weltin gave Edgil his business card and Edgil gave Weltin his daughter's cell phone number.

---

[1] She also demanded that Weltin replace a coil that had been taken.

2.

{¶ 4} Edgil passed along Weltin's business card to his daughter. Collins did not contact Weltin, but Weltin reached out to Collins by telephone a couple days after speaking with her father. Weltin was familiar with the existing unit in Collins's home because he had done work for the previous owners. He knew that the existing unit was an R22 system that used refrigerant, and as of January 1, 2010, had become illegal to install under the Environmental Protection Act. As such, he was certain that Collins would need an entirely new unit. Before calling her, he obtained prices for the materials necessary to perform the work.

{¶ 5} The parties have different versions of what was actually communicated during their telephone conversation. According to Weltin, he told Collins that her existing unit would not be able to be repaired and he quoted her a price of $4,500 to replace it—$2,800 for parts and materials and $1,700 for labor. Weltin did not specifically explain to Collins that changes in the law necessitated installing a new unit. According to Collins, Weltin did not inform her that her existing unit was unrepairable. She also insisted that Weltin quoted her a price of $3,300 should the unit need to be replaced—$2,800 for parts and materials and $500 for labor.

{¶ 6} The discrepancy in their recollections aside, a new unit was delivered to Collins's house,[2] and Collins allowed Weltin to enter her home to begin work. She was away much of the time he was there, but left the door unlocked for him. Weltin replaced

---

[2] Weltin said it was delivered three to five days before he began the work, Collins said it was delivered the night before.

Collins's existing unit with the new unit. As was his normal practice, he hauled away Collins's old unit and placed it behind his shop where he knew it would eventually be taken away by scrappers, who Weltin estimated would sell the metal for approximately $50.

{¶ 7} Weltin had more work to do to finalize the installation of Collins's new unit and would need another day to complete the project. In the meantime, Collins became upset that Weltin had taken the old unit and she communicated her dissatisfaction to Weltin. She demanded that it be returned, but scrappers had already taken it. Collins had no complaints with the workmanship itself, however, and allowed Weltin to return about a week later to finish the job. A few days after completing the work, Weltin left a bill for $4,500 in Collins's door.

{¶ 8} Collins objected to the amount of the bill and refused to pay Weltin because she insisted that the price quoted for the work was $3,300. Weltin denied quoting her $3,300. They argued about this via text messaging over the course of several days. Collins told Weltin that if he would not accept $3,300, he should come get the unit from her house. Weltin refused and told Collins that he would be filing a mechanics lien against her property. After weeks of back-and-forth and mutual threats to involve their respective lawyers, Weltin suggested that they "meet in the middle"—$3,900—to avoid the need for court intervention. Collins declined to compromise and continued to demand that Weltin remove the unit from her home.

4.

{¶ 9} Weltin filed a complaint against Collins in small-claims court on October 17, 2018. Collins sent Weltin a letter via certified mail dated November 16, 2018, demanding that he remove the air-conditioning unit from her property within ten days. He did not. About seven weeks later, on January 3, 2019, Collins filed a counterclaim against Weltin for $450—what she claimed was the value of her old unit.

{¶ 10} The case was tried on March 11, 2019—both parties appeared pro se—and on March 20, 2019, the trial court entered judgment in favor of Weltin for $4,366.95. One-thousand-seven hundred dollars represented labor charges. The invoices Weltin submitted to the court showed that he incurred materials costs of $2,853.38,[3] but the trial testimony demonstrated that the invoice reflected the price for an Air Ease-brand system when he actually installed a Concord—a unit that cost $126.43 less than the Air Ease. The court purported to subtract $126.43 from Weltin's material costs to account for that discrepancy.[4] Because the court also found that no agreement had been reached that Weltin would take Collins's old unit, it offset Weltin's award by $50.00—the amount it concluded represented the scrap value.[5]

---

[3] The invoice Weltin submitted was not the actual invoice for the materials. It was obtained from the same company from which he bought the materials and was obtained shortly before trial for purposes of proving damages at trial.

[4] As shown in the following footnote, the court seems to have made a mathematical error.

[5] It appears to this court that the trial court's math is slightly off ($2,853.38 - $126.43 = $2,726.95. $2,726.95 + $1,700 = $4,426.95. $4,426.95 - $50 = $4,376.95—*not* $4,366.95 as the court calculated.) We also note that the court's calculation failed to take into account sales tax. (The Air Ease unit was $1,456.33 + 7.25 percent tax, totaling

5.

**{¶ 11}** Collins appealed and assigns the following error for our review:

THE TRIAL COURT ERRED IN FINDING AND ENFORCING

AN ORAL CONTRACT BETWEEN THE PARTIES.

## II. Law and Analysis

**{¶ 12}** The trial court's award in favor of Weltin was premised on its conclusion that an implied contract had been formed between Weltin and Collins as evidenced by the fact that work was "performed by [Weltin] and materials furnished by [him] for [Collins] under circumstances which [Collins] knew and should have known that services were provided with the expectation of being paid on the basis of [Weltin's] reasonable work." In her sole assignment of error, Collins maintains that the parties' contract was governed by the Home Solicitation Sales Act ("HSSA"), therefore, the trial court erred in finding the existence of an implied common-law contract.

**{¶ 13}** We review small-claims court proceedings under an abuse-of-discretion standard. *Broadstock v. Elmwood at the Springs*, 6th Dist. Sandusky No. S-12-021, 2013-Ohio-969, ¶ 6. "A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly

$1,561.91. The Concord was $1,329.90 + 7.25 percent sales tax, totaling $1,426.32. This is a difference of $135.59—*not* $126.43 as calculated by the trial court.) The amount of the invoice for all materials with tax ($2,853.38) – the amount of the Air Ease unit after tax ($1,561.91) + the amount of the Concord unit with tax ($1,426.32) + labor ($1,700) – the offset for the old unit that was scrapped ($50) = $4,367.79. The discrepancy is less than $1.00 and is in favor of Collins. Because it is so minimal and because Weltin has not filed a cross-appeal, we will not disturb the trial court's damages calculation.

6.

unsound." *State v. Nisley*, 3d Dist. Hancock No. 5-13-23, 2014-Ohio-981, ¶ 15, *State v. Boles,* 187 Ohio App.3d 345, 2010-Ohio-278, ¶ 16-18 (2d Dist.).

{¶ 14} According to Collins, the purchase of the air-conditioning unit constituted a home solicitation sale under R.C. 1345.21(A). R.C. 1345.22(A) of the HSSA allows a buyer to cancel a home solicitation contract by providing written notice to the seller within three business days of execution of the contract. Where a seller fails to notify the buyer in writing of this right to cancel using statutorily-mandated language provided in R.C. 1345.23, the three-day deadline for cancelling is tolled. R.C. 1345.23(C). Here, Collins claims, Weltin never provided her with the required notice of her right to cancel, therefore, she timely exercised her right to cancel the purchase of the air-conditioning unit when she demanded via text message, and later by certified mail, that Weltin remove it from her home.

{¶ 15} Collins's HSSA argument was not raised in the trial court. "It is well-settled that issues not raised in the trial court will not be considered on appeal." *Mainwold Bros., Inc. v. Ziarno*, 6th Dist. Lucas No. L-97-1429, 1998 WL 800959, *2 (Nov. 20, 1998) (observing that appellant failed to raise applicability of HSSA in trial court and could not assert its applicability for the first time on appeal). Collins does not specifically acknowledge the effect of her failure to raise this argument in the trial court, other than to briefly acknowledge that she did not use "precise legal terminology" referencing the protections of the HSSA and to emphasize the latitude given to pro se litigants who choose to resolve their disputes in small-claims courts. But the requirement

7.

that issues first be raised in the trial court—or else waived—is equally applicable to matters litigated in small-claims court.

{¶ 16} Small-claims court proceedings are intended to be informal and are "geared to allowing individuals to resolve uncomplicated disputes quickly and inexpensively." *Mandzuch v. Affordable Reasonable Rentals*, LLC, 11th Dist. Geauga No. 2018-G-0179, 2019-Ohio-2092, ¶ 19. "The process is an alternative to full-blown judicial dispute resolution" and parties often appear pro se. *Id.* To that end "small claims courts are not bound by the Rules of Evidence nor by the Rules of Civil Procedure." *Young v. Jenkins*, 4th Dist. Gallia No. 94-CA-29, 1995 WL 351361, *2 (June 8, 1995); Evid.R. 101(C)(8); Civ.R. 1(C)(4).

{¶ 17} Nevertheless, small-claims litigants "are not permitted to ignore established principles of appellate review." (Internal quotations and citations omitted.) *Gibson v. Shephard*, 2017-Ohio-1157, 87 N.E.3d 846, ¶ 38 (8th Dist.). This means that in order to pursue an argument or legal issue in the appellate court, that argument or legal issue must have first been raised in the trial court. *Id.* Otherwise, it will be deemed waived. *Id.*

{¶ 18} In *Firestone v. Rainer*, 4th Dist. Washington No. 79-CA6, 1980 WL 351005, *2 (Mar. 27, 1980), for instance, the appellate court concluded that the defendant waived the defense of statute of limitations by failing to raise the issue in the small-claims court. The court acknowledged that no answer need be filed in small-claims matters, thus the defendant was not required to assert the affirmative defense in a pleading. Rather, it explained, "[a]ll that is contemplated in [the small claims] setting is

8.

that the defense be raised at some time for consideration by the trial court." *Id.* But "[i]f the defense is not raised by a defendant, it must be considered waived." *Id.* *See also Barker v. N. Shore Travel, Inc.,* 8th Dist. Cuyahoga No. 51974, 1987 WL 9134, *2 (Apr. 2, 1987) (finding in small-claims action that "[a] party may not raise issues or assert new legal theories for the first time before an appellate court"); *Zachrich v. Adkins,* 6th Dist. Lucas No. 7742, 1974 WL 185021, *1 (Dec. 20, 1974) ("As to assignment of error No. 5, the real party in interest issue was not raised in this Small Claims proceeding in the trial court and is therefore found not well taken.").

{¶ 19} Here, Collins submits that while she "did not use precise legal terminology in the court below, the case she presented to the trial court is consistent with her rights under the HSSA." However, to assert the protections of the HSSA, the initial burden was on Collins to show that the transaction was a "home solicitation sale" to which the HSSA applied. *See Kamposek v. Johnson*, 11th Dist. Lake No. 2003-L-124, 2005-Ohio-344, ¶ 19; *Gatrell v. Kilgore*, 3d Dist. Crawford No. 3-99-20, 1999 WL 1243201* 4 (Dec. 22, 1999) (recognizing that buyer has initial burden to demonstrate applicability of HSSA). Our review of the record convinces us that not only did Collins not use "legally precise terminology," she did not argue even generally that the HSSA applied.

{¶ 20} Because Collins's position on appeal revolves entirely around her contention that the HSSA applies and that she timely invoked the three-day right to cancel provided in R.C. 1345.22(A)—arguments and legal issues that she failed to raise in the trial court—these arguments and legal issues have been waived. Accordingly, we

9.

conclude that the trial court did not abuse its discretion in granting judgment in favor of Weltin, and we find Collins's sole assignment of error not well-taken.

## III. Conclusion

{¶ 21} By failing to raise the issue in the small-claims court, Collins waived her argument on appeal that the HSSA applied and that she timely complied with its three-day right to cancel the contract for installation of the air-conditioning unit. We, therefore, find her single assignment of error not well-taken and affirm the March 20, 2019 judgment of the Fremont Municipal Court, Small Claims Division. Collins is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                                                         _____
                                                            JUDGE

Thomas J. Osowik, J.

Christine E. Mayle, J.                                            _____
CONCUR.                                                               JUDGE

_____
                                                              JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.