[Cite as *Kavalec v. Ohio Express, Inc.*, 2016-Ohio-5925.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103410**

## STEVEN J. KAVALEC, ET AL.

PLAINTIFFS-APPELLEES

vs.

## OHIO EXPRESS, INC., ET AL.

DEFENDANTS-APPELLANTS

**JUDGMENT:**
AFFIRMED IN PART;
REVERSED IN PART; AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-804289

**BEFORE:** E.A. Gallagher, P.J., E.T. Gallagher, J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** September 22, 2016

**ATTORNEY FOR APPELLANT**

Andrea L. Burdell-Ware
The ABW Law Firm
420 North Court Street
Medina, Ohio 44256


**ATTORNEYS FOR APPELLEE**

Daniel L. Powell
Mark V. Guidetti
Joseph W. Diemert
Joseph W. Diemert & Associates
1360 Som Center Road
Cleveland, Ohio 44124

Chance Douglas
W. Andrew Hoffman
Hoffman Legal Group L.L.C.
24100 Chagrin Blvd.
Suite 280
Cleveland, Ohio 44122


**FOR PHOENIX RISING TRANSPORTATION L.L.C.**

Alanna B. Klein
17325 Euclid Ave.
Suite 3021
Cleveland, Ohio 44112

EILEEN A. GALLAGHER, P.J.:

**{¶1}** Defendant-appellant Robert Kavalec appeals from the judgments entered against him in the Cuyahoga County Court of Common Pleas on plaintiff-appellees William Kavalec, Stuart Kavalec and Steven Kavalec's claims for conversion.[1] We affirm in part, and reverse in part.

**Facts and Procedural Background**

**{¶2}** This case arises out of a business dispute amongst family members. At one time, William Kavalec operated a trucking company, to wit: Cleveland Cartage Service, Inc. ("Cleveland Cartage"), out of 3600 Ridge Road in Brooklyn, Ohio. In 1993, William retired and left behind all the shop equipment of Cleveland Cartage for his sons, Steven and Stuart, to use in the operation of their own trucking corporation, Hawk Enterprises ("Hawk").

**{¶3}** Hawk was incorporated on October 22, 1992, opened in July 1993, and operated out of 3600 Ridge Road until 2010. Hawk's business suffered a downturn due to the recession and was strained by financial difficulties in 2010. A proposal was made wherein Robert Kavalec, uncle to Steven and Stuart, and brother to William, would open a new corporation, Ohio Express, which would purchase the assets of Hawk and assume certain Hawk liabilities. Robert would be the president of Ohio Express and Steven and Stuart would continue to operate the trucking business under the new corporation.

---

[1]For clarity and ease of discussion the parties are referred to by their first names throughout this opinion.

{¶4} Ohio Express was incorporated in July 2010 and an asset purchase agreement between Hawk and Ohio Express was signed by Robert and Stuart on August 16, 2010. Ohio Express began operating on September 7, 2010. A dispute arose between Robert and the appellees regarding the operation of the business following a motor vehicle accident in the fall of 2011. As a result, Robert's wife, Ellen Kavalec, began an audit of Ohio Express in October 2011. Following the audit, Robert and Steven had an argument on November 4, 2011, which resulted in the termination of Steven's employment with Ohio Express.

{¶5} The falling out of the parties intensified the next day when Robert demanded the keys to Ohio Express's office and sought to exclude Steven and William from the property. Steven was eventually allowed into Ohio Express's building on November 5 and removed a few items. Automobiles belonging to Steven and Stuart that were left on Ohio Express's property were later turned over to them. Ellen Kavalec also provided Steven with a check to repay him for a fuel purchase and turned over a computer and cell phones belonging to him.

{¶6} The remaining property located at 3600 Ridge Road, which Robert believed belonged to Ohio Express, was liquidated in an asset purchase agreement with a company called Phoenix Rising Transport.

{¶7} A complaint in this action was filed on November 10, 2011, and was mutually dismissed without prejudice by the parties on April 10, 2012. The complaint was refiled on April 5, 2013. Appellees alleged claims of fraudulent inducement, breach

of contract, intentional interference with prospective economic advantage, tortious interference with contract, civil theft and replevin. The complaint also included a declaratory judgment action. Counterclaims for conversion and breach of fiduciary duty were asserted by Robert and Ellen Kavalec.

{¶8} The case proceeded to a jury trial. Following the presentation of the plaintiffs-appellees' case, appellant moved for a directed verdict. As a result of that motion, the trial court sua sponte and over objection converted appellees' claims for civil theft and replevin into a single count of conversion. On the conversion claim, the jury returned verdicts against Robert in the amounts of $78,800 in favor of William, $41,679 in favor of Steven and $4,900 in favor of Stuart. Because only the conversion verdicts against Robert personally have been appealed, we limit our discussion to the conversion claim.

{¶9} Following trial, Robert filed motions for a new trial and judgment notwithstanding the verdict. The trial court denied the motion for new trial but granted the motion for judgment notwithstanding the verdict, in part, and denied it in part. The trial court reduced the verdict in favor of Stuart by $2,000, finding that $2,000 of the $4,900 in conversion damages sought by Stuart was established to be property of a separate entity. The trial court otherwise denied the motion for judgment notwithstanding the verdict.

**Law and Analysis**

**I. The Trial Court's Ruling on the Motion for Directed Verdict**

**{¶10}** In his first assignment of error, Robert argues that the trial court erred in failing to grant his motion for directed verdict with respect to appellees' claims for replevin and civil theft.

**{¶11}** We find this assignment of error to be moot. Although the trial court stated that it denied Robert's motion for directed verdict as to appellees' claims for civil theft and replevin, the court incongruously "converted" those claims into a single claim of conversion and did not allow the theft and replevin claims to be submitted to the jury. In fact, the trial court specifically noted that the required formalities for proceeding under a replevin claim had not been followed by appellees. The trial court's action in amending the complaint into a single conversion claim and not allowing appellees to proceed with their civil theft and replevin claims had the same effect as granting a directed verdict on those claims.[2]

**{¶12}** Therefore, appellant's first assignment of error is moot.

## II. The Trial Court's Sua Sponte Amendment of the Complaint

**{¶13}** In his second assignment of error, Robert argues that the trial court erred and abused its discretion in sua sponte amending the pleadings to replace the replevin and civil theft claims with a single count of conversion. Robert argues that he did not have adequate notice that conversion was a claim in the case or an adequate opportunity to

---

[2]We note that appellees have not raised as their own error the trial court's refusal to submit the claims for replevin and civil theft to the jury.

prepare a defense and question witnesses as to conversion. The trial court rejected this argument as part of its denial of Robert's motion for judgment notwithstanding the verdict, stating:

> The court finds that the elements for theft and replevin are substantially the same as those of conversion. Likewise, the evidence Defendant required to defend against those claims for theft and replevein are substantially the same as those required to defend against claims for theft and replevin. Therefore, the court's amendment to the Complaint did not substantially prejudice the Defendant.

**{¶14}** The authority of a trial court to sua sponte amend the pleadings pursuant to Civ.R. 15(B) has been previously established under Ohio law. *King Steel Sales Corp. v. Hanover Steel Corp.*, 8th Dist. Cuyahoga No. 46584, 1983 Ohio App. LEXIS 12860 (Dec. 15, 1983); *Stafford v. Aces & Eights Harley-Davidson, LLC*, 12th Dist. Warren No. CA2005-06-070, 2006-Ohio-1780, ¶ 22 (affirming the trial court's decision to sua sponte apply Civ.R. 15(B) and amend pleadings even though the parties never moved to amend their pleadings).

**{¶15}** Civ.R 15(B) allows for the amendment of the pleadings to conform to evidence presented at trial and, therefore "treats issues that were not raised in the pleadings as if they were so raised, as long as they were tried with the express or implied consent of the parties and substantial prejudice will not arise from the result." *Nguyen v. Chen*, 12th Dist. Butler No. CA2013-10-191, 2014-Ohio-5188, ¶ 16, quoting *Aztec Internatl. Foods, Inc. v. Duenas*, 12th Dist. Clermont No. CA2012-01-002, 2013-Ohio-450, ¶ 25. "The rule expresses a liberal policy toward the allowance of amendments * * * [and] was promulgated to provide the maximum opportunity for each

claim to be decided on its merits rather than on procedural niceties." *Stafford*, at ¶ 21, quoting *Hall v. Bunn*, 11 Ohio St.3d 118, 121, 464 N.E.2d 516 (1984).

{¶16} "Under Civ. R. 15(B), implied consent is not established merely because evidence bearing directly on an unpleaded issue was introduced without objection; it must appear that the parties understood the evidence was aimed at the unpleaded issue." *State ex rel. Evans v. Bainbridge Twp. Trustees*, 5 Ohio St.3d 41, 448 N.E.2d 1159 (1983), paragraph two of the syllabus.   In determining whether the parties impliedly consented to litigate an issue, various factors should be considered, including: "whether [the parties] recognized that an unpleaded issue entered the case; whether the opposing party had a fair opportunity to address the tendered issue or would offer additional evidence if the case were to be tried on a different theory; and, whether the witnesses were subjected to extensive cross-examination on the issue." *Id.*, at paragraph one of the syllabus.

{¶17} Whether the parties impliedly consented to try an unpleaded issue is a decision left to the sound discretion of the trial court and, therefore, will not be reversed absent an abuse of discretion.   *Id.*, at paragraph three of the syllabus. An abuse of discretion implies that the trial court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶18} In the case sub judice, the record reflects that Robert did not expressly consent to the trial of the conversion claim, in fact, when the subject of a conversion action was raised for the first time by the trial court during the consideration of Robert's

motion for a directed verdict, Robert objected to the amendment. Therefore, we consider whether Robert impliedly consented to litigate the conversion claim.

{¶19} We are guided by the Seventh District Court of Appeals' decision in *Allied Erecting Dismantling Co. v. Youngstown*, 151 Ohio App.3d 16, 2002-Ohio-5179, 783 N.E.2d 523. In concluding that the trial court did not err in allowing an amendment at trial to include a conversion claim, the court in *Allied Erecting Dismantling* held that although the plaintiff had not plead conversion in its complaint, pursuant to notice pleading under Civ.R. 8(A), the defendant was given fair notice of the claim and an opportunity to respond. *Id*. at ¶ 73-75. The court noted that the plaintiff was not bound by any particular theory of a claim but rather to the facts. "In other words * * * it is sufficient that the facts of the complaint assert the elements of the claim even if the complaint does not state the theory of recovery." *Id*. at ¶ 75, citing *Alexander v. Culp*, 124 Ohio App.3d 13, 18, 705 N.E.2d 378 (8th Dist. 1997).

{¶20} The elements of conversion are "(1) plaintiff's ownership or right to possession of the property at the time of conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *Dream Makers v. Marshek*, 8th Dist. Cuyahoga No. 81249, 2002-Ohio-7069, ¶ 19, quoting *Haul Transport of Va., Inc. v. Morgan*, 2d Dist. Montgomery No. CA 14859, 1995 Ohio App. LEXIS 2240 (June 2, 1995). Conversion is "any distinct act of dominion wrongfully exerted over one's property in denial of his rights or inconsistent with it." *Schiff v. Dickson*, 8th Dist. Cuyahoga Nos. 96539 and 96541, 2011-Ohio-6079, ¶ 30.

**{¶21}** As in *Allied Erecting Dismantling*, appellees in the present case asserted factual allegations in the complaint consistent with the elements of conversion, including: (1) that they were prevented from entering the premises of Ohio Express; (2) that Robert "either took or prevented Plaintiffs from accessing personal items that were located on the premises, including cash from a safe, several cars, a computer, and tools"; (3) that Robert moved all assets improperly held by Ohio Express and improperly liquidated or transferred said assets; and (4) that Robert removed, exerted control over and/or liquidated appellee's personal property.

**{¶22}** Consistent with *Allied Erecting Dismantling*, although appellees in the present case may not have specifically stated they were proceeding under a conversion theory, under notice pleading and the above alleged facts Robert had notice of appellees' claim of conversion from the inception of the lawsuit and could not be prejudiced by an amendment to the complaint. *Allied Erecting Dismantling,* at ¶ 77. We find the trial court's logic that appellees' claims for replevin and civil theft provided sufficient notice to Robert to preclude any prejudice in the sua sponte amendment.

**{¶23}** Finally, the record reveals that Robert had a fair opportunity to address the conversion claim at trial. There is no indication that Robert would have offered any additional evidence pertaining to the conversion claim or explored the claim in a different manner on cross-examination. As such, we find no error in the trial court's sua sponte amendment converting appellees' replevin and civil theft claims into a conversion claim.

**{¶24}** Appellant's second assignment of error is overruled.

### III. Manifest Weight

**{¶25}** In his third assignment of error, Robert argues that the jury's verdict on the conversion claim was against the manifest weight of the evidence.

**{¶26}** When reviewing the manifest weight of the evidence in a civil case, this court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20. A verdict supported by some competent, credible evidence going to all the essential elements of the case must not be reversed as being against the manifest weight of the evidence. *Domaradzki v. Sliwinski*, 8th Dist. Cuyahoga No. 94975, 2011-Ohio-2259, ¶ 6; *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

**{¶27}** Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990).

**{¶28}** We are guided by a presumption that the findings of the trier of fact are correct. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). This presumption arises because the trier of fact had an opportunity "to view the

witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Id*. No judgment resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the cause. Ohio Constitution, Article IV, Section 3(B)(3).

**{¶29}** Robert first argues that the jury's verdict finding him liable for converting appellees' property was against the manifest weight of the evidence because the appellees failed to make demands for the return of their personal property. We find no merit to this argument.

**{¶30}** Stuart and Steven both testified that they demanded the return of their property. William, however, admitted that he did not make a similar demand. Appellees argue that all three men made a "demand" for the return of their property in the form of the originally filed complaint in November 2011. However, we are unaware of any legal authority to support appellees' proposition that a complaint can satisfy the demand requirement commensurate with a valid conversion action. In fact, such a claim would be invalid from its inception. Nor are we persuaded by appellees' argument that the refiling of the same claim somehow cured any defect.

**{¶31}** Nonetheless, William was not obligated to make a demand for the return of his property before asserting a conversion claim in this instance.

> A demand of return of personal property is not always a prerequisite to the maintenance of an action for conversion thereof. A demand and refusal is necessary only where the person alleged to have converted the property has rightfully obtained possession thereof and, therefore, cannot be found to

have converted the property unless he either fails to restore it upon demand or by some other act of his creation unlawfully exercises dominion over the property.

*Drakoules v. Dairy Queen of Whitehall, Inc.*, 10th Dist. Franklin Nos. 76AP-961 and 77AP-157, 1977 Ohio App. LEXIS 7412 (Aug. 9, 1977); *6750 BMS, L.L.C. v. Drentlau*, 8th Dist. Cuyahoga No. 103409, 2016-Ohio-1385, ¶ 28 (noting that a demand is only an additional element required to prove conversion where the defendant came into possession of the property lawfully).

**{¶32}** The record reflects that immediately following the parties' falling out on November 4, 2011, the parties disputed the ownership of the property at 3600 Ridge Road. William testified that he was locked out of the premises on November 5, the police were called and he informed them that he had personal property inside the shop. Steven testified that Robert told the police that he owned everything on the premise and that Steven and his father had no right to be on the property. Later on November 5, Robert entered the property without the keys, which remained in the possession of Steven and triggered the building's alarm. The police were called again, Steven was able to retrieve a few items from the premises and Robert began removing property from the office. In contrast to his alleged statements to the police, Robert testified at trial that he was aware that a safe on the property belonged to William. The record also reflects awareness on his part of an automobile on the property that belonged to Steven. Under the facts of this case, we cannot say that a finding by the jury that Robert wrongfully came into possession of William's personal items was against the manifest weight of the

evidence. Therefore, William was not required to make a demand for the return of his personal property prior to asserting a conversion claim against Robert.

**{¶33}** Robert next argues that the jury's damage awards for conversion were against the manifest weight of the evidence. We agree, finding two errors with the damage awards.

**{¶34}** First, the trial court ruled at sidebar that appellees could only recover their personal property under the conversion claim. In fact, the trial court noted in its journal entry converting appellees' civil theft and replevin claims into a conversion claim that the parties had stipulated that the conversion claim only applied to appellees' personal property. The trial court's rulings at sidebar made it clear to the parties that corporate property allegedly belonging to Cleveland Cartage or Hawk could not be recovered under the conversion claim.

**{¶35}** Pursuant to William's testimony, the vast majority of the items he sought under conversion were the property of Cleveland Cartage. In fact, he testified that only $7,450 worth of items listed on his exhibit in favor of his conversion claim were his personal property. Consistent therewith, William's trial counsel conceded in closing argument that he was only seeking the $7,450 in damages for conversion as that figure represented his personal property. The jury's award of $78,800 in his favor was plainly against the manifest weight of the evidence.

**{¶36}** Secondly, we find the damage awards for the conversion claims of all three appellees to be against the manifest weight of the evidence due to the speculative nature of the evidence offered in support of the valuation of their personal property.

**{¶37}** Damages cannot be based on a mere "guesstimate." *Buckeye Trophy, Inc. v. S. Bowling & Billiard Supply Co.*, 3 Ohio App.3d 32, 443 N.E.2d 1043 (10th Dist. 1982); *Bevens v. Wooten Landscaping, Inc.*, 4th Dist. Pike No. 11CA819, 2012-Ohio-5137, ¶ 17. Damages need not be calculated with mathematical certainty, but cannot be based on mere speculation and conjecture. *Marzullo v. J.D. Pavement Maintenance*, 8th Dist. Cuyahoga No. 96221, 2011-Ohio-6261, ¶40. Instead, a plaintiff must show its entitlement to damages in an amount ascertainable with reasonable certainty. *Id.*, citing *Barker v. Sundberg*, 11th Dist. Ashtabula No. 92-A-1756, 1993 Ohio App. LEXIS 5112 (Oct. 25, 1993); *Glenwood Homes v. State Auto Mut. Ins. Co.*, 8th Dist. Cuyahoga No. 72856, 1998 Ohio App. LEXIS 4656 (Oct. 1, 1998) (speculative damages are not recoverable).

**{¶38}** The evidence offered by appellees regarding their damages in this case did not satisfy the above standard. Appellees each submitted an exhibit listing the personal items they claimed under conversion along with the items' fair market value and replacement values. None of the appellees submitted receipts for any of the items. There was no evidence offered detailing the condition of any of the items, many of which were more than a decade old.

**{¶39}** While these qualms, alone, would not be fatal to recovery, appellees' testimony on damages was speculative at best. William conceded that all his valuations

for replacement costs were "guesses." He also testified that many of the items were purchased 30 to 40 years ago and he didn't know the purchase price. Steven and Stuart described how they "estimated" the value of their items by looking up what they believed to be *comparable* items on ebay, craigslist and various other online retailers and then assigning value to their items based on new and used prices they found on such websites. However, none of the out-of-court materials appellants' purportedly relied upon for their fair market value figures were introduced into evidence. This precluded any meaningful scrutiny of the relied upon listings, their valuations or their alleged comparable nature and condition relative to the items appellants sought recovery for.

{¶40} This is not an instance where damages were substantiated by online research of comparable items that was entered into the record. *See, e.g., State v. Hollowell*, 6th Dist. Wood No. WD-12-072, 2014-Ohio-1142, ¶ 34 (the testimony of the witnesses along with evidence of online price research for comparable items served as competent, credible evidence that allowed the court to discern the price of the items to a reasonable degree). Appellees' failure to submit documentation to support their out-of-court valuation research precluded appellant from any fair opportunity to challenge the outside materials as well as any ability to challenge the comparable nature of the items sought to the items found on the internet.

{¶41} Aside from this lack of documentation, appellees' testimony failed to address the depreciation of the subject items with any reasonable certainty. For example, Steven sought recovery for a bobcat vehicle and testified that a used bobcat

could be bought for "maybe $6,000." However, he admitted that he had no knowledge of the hour meter on his bobcat for the purposes of evaluating its depreciation or current value. Despite this testimony, he sought and recovered $8,000 in fair market value damages for the bobcat.

{¶42} As further examples of the speculative nature of the damages testimony, Steven sought, and recovered, $700 worth of coins that he testified, "was just an estimated guess and that could be way off." He also determined the value of a lawn mower of unspecified age and condition by examining new lawn mowers at Home Depot and pricing his own "on the lowest side."

{¶43} Finally, the record reflects that several of the same items including a snowblower and boat stand were listed on both William and Steven's personal property exhibits.

{¶44} Based on the above testimony, we find that appellees failed to offer proof of their damages with reasonable certainty and, therefore, the jury's award of damages on appellees's conversion claim was against the manifest weight of the evidence.

{¶45} Appellant's third assignment of error is sustained, in part, and overruled, in part.

### IV. Jury Interrogatories

{¶46} In his final assignment of error, Robert argues that the trial court erred in failing to permit his trial counsel an opportunity to review the jury interrogatories prepared by the court before bringing in the jury and failing to include within those

interrogatories its evidentiary ruling excluding corporate property from the appellees' conversion claims as well as a description of the demand element associated with conversion.

{¶47} The record reflects that appellant failed to object to the interrogatories. It is well settled that errors arising during the course of trial that are not brought to the attention of the court by objection or otherwise are waived and may not be raised on appeal. *State v. Williams*, 51 Ohio St.2d 112, 364 N.E.2d 1364 (1977), paragraph one of the syllabus. The Ohio Supreme Court has repeatedly stressed that to preserve an issue for appeal, a party must "timely advise a trial court of possible error, by objection or otherwise[.]" *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997). Thus, absent an objection, we review for plain error. *Franklin v. Berea*, 8th Dist. Cuyahoga No. 93894, 2010-Ohio-4350, ¶ 36.

{¶48} We find no plain error in this instance. The record reflects that the trial court provided counsel for both parties with copies of the interrogatories and verdict forms for review. Appellees' counsel indicated that they had reviewed the materials. Appellant's counsel stated "[a]lmost done, your honor. I have a couple more to go. I've reviewed the first half." The trial court then indicated that it was ready to proceed and instructed the jury to be brought out. No objection was made by appellant's counsel indicating that more time was needed to finish the review of the jury interrogatories. Appellant did not object to the interrogatories after the trial court reviewed them with the jury despite being provided an opportunity to do so.

**{¶49}** Furthermore, as to the specific defects in the interrogatories asserted by appellant we find these arguments to be moot in light of our resolution of appellant's third assignment of error. Our reversal of appellees' damages awards renders moot appellant's argument regarding the failure of the trial court to explain its sidebar ruling excluding corporate property from the potential damages for conversion. Similarly, our above discussion regarding the demand element of appellees' conversion claims renders moot any challenge to that subject matter within the interrogatories. Even if that topic were not moot we note that the trial court included an instruction pertaining to demand in the jury instructions rendering any reiteration of that element in the jury interrogatories superfluous.

**{¶50}** Appellant's fourth assignment of error is overruled.

**{¶51}** The judgment of the trial court is affirmed in part, and reversed in part.

**{¶52}** Because we find appellant's third assignment of error to be meritorious and the damages portion of the judgment to be against the manifest weight of the evidence, we reverse and remand for a new trial limited to the issue of damages pursuant to App.R. 12(C)(2).

**{¶53}** This cause is affirmed in part, reversed in part and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
FRANK D. CELEBREZZE, JR., J., CONCUR