[Cite as *Gibson v. Shephard*, 2017-Ohio-1157.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 104513**

---

# MONIQUE N. GIBSON

PLAINTIFF-APPELLEE

vs.

# DAN SHEPHARD, ET AL.

DEFENDANTS-APPELLANTS

---

## JUDGMENT:
AFFIRMED

---

Civil Appeal from the
Cleveland Municipal Court
Case No. 2015 CVI 011184

**BEFORE:** E.A. Gallagher, P.J., McCormack, J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** March 30, 2017

**ATTORNEYS FOR APPELLANTS**

Gary L. Lieberman
Darren J. Dowd
Brad A. Straka
David M. Dvorin
Lieberman, Dvorin & Dowd, L.L.C.
30195 Chagrin Blvd., Suite 300
Pepper Pike, Ohio 44124

**ATTORNEY FOR APPELLEE**

Doron M. Kalir
Civil Litigation Clinic
Cleveland-Marshall College of Law
2121 Euclid Avenue, L.B. 079
Cleveland, Ohio 44115

EILEEN A. GALLAGHER, P.J.:

{¶1} Defendants-appellants Vanguard Property Management Ltd. ("Vanguard") and Cleveco, L.L.C. ("Cleveco") (collectively, "appellants") appeal from the judgment of the Cleveland Municipal Court, awarding plaintiff-appellee Monique Gibson $1,959 in damages on her claim to recover for the loss of personal property she had stored in a storage locker provided for her use by appellants, the property manager and landlord of an apartment she had leased. For the reasons that follow, we affirm the trial court's judgment.

**Factual and Procedural Background**

{¶2} On July 31, 2015, Gibson filed a small claims complaint, pro se, against Dan Shephard and Vanguard in Cleveland Municipal Court, alleging that they were responsible for the unauthorized access of and removal of her personal property from the storage locker and seeking $1,959 in damages allegedly caused by their negligence. Vanguard was the property manager for the apartment complex in which Gibson resided, and Shephard was its managing partner. Gibson thereafter amended her complaint, adding Cleveco, the landlord and property owner, as a defendant and her claims against Shephard were dismissed.

{¶3} On October 14, 2015, a trial was held before a magistrate. Gibson appeared pro se and testified on her own behalf. Sheila Mazzo, Cleveco's property manager, testified on behalf of appellants. A summary of the evidence presented at trial follows.

**{¶4}** In April 2014, Gibson entered into a 12-month lease with Cleveco for a unit in the Brookside Oval Apartments complex in Cleveland. Gibson testified that when she paid her deposit and received her keys, the property manager told her that she could use any of the empty storage lockers in the laundry room to store her personal belongings. There were 11 or 12 storage lockers, one for each unit. According to Gibson, the storage lockers were see-through units, "so you could see everything in each of those."

**{¶5}** Gibson testified that when she first moved in, she used one of the storage lockers for approximately two weeks but did not place a lock on it and her belongings "came up missing." She thereafter placed a lock on the locker and used the same locker to store her belongings, accessing the locker two or three times each week, without incident until July 2015.

**{¶6}** Gibson testified that on July 5, 2015, she accessed the locker and "it was fine"; "[e]verything was there and the lock was on." At that time, Gibson had stored her and her children's winter clothing and winter coats, a playpen, Christmas tree and decorations, comforters and a baby monitor in the storage unit. When Gibson accessed the locker the following weekend, however, "everything was gone, the lock was gone." Gibson indicated that a green label bearing the number 913 (which had not been there previously) had been placed above the storage locker. Only one other storage locker had a similar label over it.

**{¶7}** Gibson testified that she immediately attempted to contact the leasing office but it was closed. When Gibson contacted the leasing office the following Monday to

find out what had happened to her belongings, a management representative (later identified as Mazzo) told Gibson that she "didn't know anything about it." Gibson indicated that Mazzo told her that the tenants in unit 913 had been evicted and had vacated the premises at the beginning of the month. When Gibson pressed Mazzo to find out what had happened, Mazzo indicated that she would call the maintenance department to determine if one of the maintenance personnel had removed Gibson's belongings. Gibson stated that approximately a minute later, Mazzo called her back and said that the maintenance personnel did not remove Gibson's belongings from the storage locker.

{¶8} Mazzo testified that approximately two years earlier, management distributed brightly colored stickers to all tenants with their apartment numbers and asked them to place the stickers on the storage lockers they were using. She stated that some of the lockers still have the stickers on them but that others do not. She testified that when new tenants move in, they are told that if there is no storage locker with their apartment number, they can use any empty locker. With respect to what is done if a tenant vacates an apartment but leaves belongings behind in a storage locker, Mazzo testified that management does not look to see if tenants have left belongings in a storage locker after they have vacated the property. If, however, management is advised that a former tenant may have left belongings behind in a locker, she initiates what is "typically" a three-week process involving "a series of notices that go out to the entire building." She indicated that the notices advise the tenants that "we have items in a unit that we don't know who they belong to," ask the tenants to make sure any storage locker they are using is

"numbered correctly" and state a date upon which the items will be removed if the storage locker is not numbered. She indicated that any belongings removed from a storage locker are held in the maintenance garage for 30 to 60 days "to see if anyone claims what's in there." Mazzo could not recall when she last followed this procedure because "[i]t's been so long" since the issue had arisen. She indicated that she did not follow this procedure or send out any notices in this case because she "didn't know anything was wrong."

{¶9} Mazzo testified that she does not know what happened to Gibson's belongings. She indicated that when Gibson contacted her about her missing belongings, the head of the maintenance department was with her. Mazzo testified that she told Gibson that only she could authorize maintenance personnel to remove belongings from a storage locker and that she had not authorized the removal of Gibson's belongings from any storage locker. Mazzo stated that she told Gibson that, as a "double-check," she would "talk to  maintenance" and call her back. Mazzo asked the head of the maintenance department if he had authorized the removal of Gibson's belongings and he indicated that he had not. However, Mazzo did not speak with any of the other maintenance personnel to determine if any of them knew what had happened to Gibson's belongings. Mazzo called Gibson back and informed her that maintenance had not removed her belongings from the storage locker.

{¶10} Mazzo testified that she had no knowledge as to who put the 913 sticker on the storage locker but indicated that the family who had lived in apartment unit 913

moved out at the end of June. She stated that the new tenants did not move in until August and that no one was in unit 913 during July 2015 when Gibson's belongings were taken from the storage locker.

{¶11} Although Gibson contacted the police regarding the incident, Mazzo did not. Gibson testified that police officers inspected the storage locker and asked her questions about what had occurred but told her there was nothing they could do for her. Mazzo did nothing further to investigate what had happened to Gibson's belongings.

{¶12} In addition to her testimony, Gibson introduced several photographs including photographs of the storage locker with the "913" label and an itemized list describing the items or categories of items that were in the storage locker and the approximate value of each as evidence of her claims. Appellants also introduced a copy of the lease.

{¶13} On November 18, 2015, the magistrate issued his decision. He concluded that Gibson had established by a preponderance of the evidence that one of appellants' employees had removed Gibson's belongings from the storage unit, likely mistaking it for the property of the tenants who had recently vacated apartment 913 and awarded Gibson $1,959 in damages. The magistrate indicated that although Gibson presented no direct evidence that appellants' maintenance personnel had removed her belongings from the storage locker, "all the circumstantial evidence points to that conclusion." The magistrate carefully reviewed the evidence presented and explained in detail how he came

to his conclusion including what evidence he found to be more or less persuasive and why.

{¶14} With respect to the limitation of liability set forth in the lease, the magistrate concluded that the lease "disavows the landlord's responsibility only for actions not due to its own carelessness" and thus did not preclude Gibson's claim. With respect to damages, the magistrate determined that appellants' removal of Gibson's belongings without notice violated R.C. 5321.04(A)(7) and Cleveland Codified Ordinances ("C.C.O.") 375.06, entitling Gibson to $500 in damages "for the suffering she experienced due to the invasion of her privacy." He also found that Gibson was entitled to compensatory damages "for the replacement of her belongings and the inconvenience to her of having to shop to replace them." The magistrate noted that although Gibson valued her lost property at $1,959, she was limited to the damages she prayed for in her complaint and awarded her total damages of $1,959, plus court costs and interest from the date of judgment. The trial court approved and confirmed the magistrate's decision.

{¶15} Appellants filed objections to the magistrate's decision, challenging the magistrate's finding that appellants' representative had removed Gibson's belongings from the storage locker and his rejection of other possible explanations for what had happened to her belongings. Appellants also argued that (1) the lease exculpates them from liability for Gibson's losses, (2) the magistrate had improperly imposed a duty on them to investigate the incident, (3) Gibson failed to present sufficient proof of her

alleged damages and (4) the magistrate abused his discretion in concluding that appellants had violated R.C. 5321.04(A)(7) and C.C.O. 375.06 by entering Gibson's storage locker.

{¶16} On May 5, 2016, the trial court overruled appellants' objections and entered judgment in favor of Gibson for $1,959, plus court costs and interest from the date of judgment.

{¶17} Appellants appealed the trial court's judgment, raising five assignments of error for review:

> First Assignment of Error: The trial court erred by finding appellants responsible for appellee's loss when the lease expressly exculpates appellants from liability for damage to appellee's personal property at the premises.
>
> Second Assignment of Error: The trial court abused its discretion by finding that appellee sufficiently met her burden of proof that appellants removed appellee's belongings from the storage locker when appellee testified she had no evidence to substantiate her claim that appellants removed or caused to have removed her belongings.
>
> Third Assignment of Error: The trial court abused its discretion in finding appellants had a duty to investigate appellee's claims.
>
> Fourth Assignment of Error: The trial court abused its discretion by awarding appellee damages of $1,959.00 when appellee failed to prove such damages with any reasonable degree of certainty.
>
> Fifth Assignment of Error: The trial court abused its discretion by finding that appellants violated R.C. 5321.04(A)(7) and C.C.O. 375.06 for making an unreasonable entry into appellee's leased premises when appellee failed to plead such claims.

**{¶18}** For ease of discussion, we address appellants' assignments of error out of order. We address appellants' second assignment of error first.

**Law and Analysis**

**Standard of Review**

**{¶19}** The standard of review for small claims proceedings is abuse of discretion. *See, e.g., Vannucci v. Schneider*, 8th Dist. Cuyahoga No. 104598, 2017-Ohio-192, ¶ 12; *Video Discovery, Inc. v. Passov*, 8th Dist. Cuyahoga No. 86445, 2006-Ohio-1070, ¶ 7. Further, the standard of review on appeal from a decision of a trial court adopting a magistrate's decision is whether the trial court abused its discretion. *Agnew v. Muhammad*, 8th Dist. Cuyahoga No. 100599, 2014-Ohio-3419, ¶ 15, citing *Butcher v. Butcher*, 8th Dist. Cuyahoga No. 95758, 2011-Ohio-2550, ¶ 7. Under an abuse of discretion standard, the trial court's decision will be reversed only if it is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "'A decision is unreasonable if there is no sound reasoning process that would support that decision.'" *Ockunzzi v. Smith*, 8th Dist. Cuyahoga No. 102347, 2015-Ohio-2708, ¶ 9, quoting *AAAA Ents. Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). An abuse of discretion may also be found where the trial court "'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.'" *Ockunzzi* at ¶ 9, quoting *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15 (8th Dist.).

**Finding that Appellants Caused Gibson's Belongings to Be Removed from Storage Locker**

{¶20} In their second assignment of error, appellants argue that the trial court abused its discretion in adopting the magistrate's decision because Gibson failed to present sufficient evidence to prove that appellants were responsible for the removal of Gibson's personal property from the storage locker. Relying on the First District's decision in *Cawrse v. Allstate Ins. Co.*, 1st Dist. Hamilton No. 09COA002, 2009-Ohio-2843, appellants argue that "[b]ecause there were a number of equally plausible explanations" for what happened to Gibson's property, Gibson failed to establish by a preponderance of the evidence that appellants more likely than not removed her belongings from the storage locker and that the magistrate and trial court erroneously accepted her "mere speculation" as proof. We disagree.

{¶21} *Cawrse* is distinguishable. In *Cawrse*, the plaintiff filed a complaint against his insurer alleging a breach of contract based on his insurer's denial of his auto insurance claim. *Cawrse* at ¶ 1. The plaintiff claimed that he had loaned the vehicle to his estranged daughter and that she had "vandalized" it. *Id.* A hearing was held before a magistrate who found that the insurer had failed to investigate the claim of vandalism and awarded the plaintiff damages. *Id.* at ¶ 2. The trial court adopted the magistrate's decision. *Id.* The insurer appealed and the First District reversed, in part, concluding that the trial court's finding that the insurer had failed to investigate the claim was "factually incorrect," that there were "three possible scenarios" for the damage caused to the vehicle

and that the plaintiff had failed to meet his burden of proof because "[o]ther than [his] theory that vandalism had occurred, there is no other evidence to support this claim." *Id.* at ¶ 26-30.

**{¶22}** In this case, although there was no direct evidence that appellants had removed Gibson's belongings from the storage locker, there was circumstantial evidence that could have reasonably supported that conclusion. As the trial court adroitly explained, "while other *possible* explanations could exist" for what happened to Gibson's belongings, there were not "multiple *plausible* explanations":

> Plaintiff, in her testimony, may have offered theories about what happened to her belongings, in addition to what she observed; however, there is no indication that the magistrate based his decision on any of those theories, or anything but the observations of the witnesses. The magistrate evaluated the facts as presented by the witnesses, and concluded that the theft of plaintiff's belongings was committed by defendants' agents. The magistrate concluded that plaintiff had proven her case by circumstantial evidence. The magistrate's decision on this issue is supported by the evidence * * *. * * *
>
> The Magistrate recites in his decision the circumstantial evidence that he believed led to the conclusion that Defendant's [sic] employees or agents removed the property from Plaintiff's storage locker, perhaps by mistake: the lack of labels associating the lockers with specific units; the removal of all property from the unit (not only, for example, items of value); the appearance of the sticker on plaintiff's locker with the apartment number of a recently-vacated unit; the lack of signs of forced entry; and the failure of the Defendant, through the property manager, to make inquiry into the circumstances of the loss, beyond one question to the head of maintenance. Based upon these circumstances, the Magistrate determined, by a

preponderance of the evidence, that Defendant's [sic] employees likely removed Plaintiff's property from the locker. This most likely occurred by mistake, as they cleaned unit 913, and prepared it for a new occupant. This scenario, the Magistrate concluded, is more likely than not what occurred; his conclusion is supported by sufficient circumstantial evidence to constitute a preponderance of the evidence. * * *

{¶23} "'Circumstantial evidence is the proof of facts or circumstances by direct evidence from which a [factfinder] may reasonably infer other related or connected facts which naturally and logically follow, according to the common experience of man.'" *Markle v. Cement Transit Co.*, 8th Dist. Cuyahoga No. 70175, 1997 Ohio App. LEXIS 4252, *9 (Sept.18, 1997), quoting *State v. Beynum*, 8th Dist. Cuyahoga No. 69206, 1996 Ohio App. LEXIS 2143 (May 23, 1996). "Circumstantial evidence and direct evidence inherently possess the same probative value." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph one of the syllabus.

{¶24} It is well established that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. In this case, the magistrate was in the best position to determine the credibility of the witnesses. In his well-reasoned decision, the magistrate not only indicated that he was relying on circumstantial evidence for his determination that appellants' representatives removed Gibson's belongings from the storage locker but explained specifically upon what

circumstantial evidence he was relying and how that particular circumstantial evidence led him to this conclusion. The magistrate also specifically explained which testimony he found to be more credible and why he found that testimony to be more credible. The trial court then independently reviewed this evidence and explained why it agreed with the magistrate's conclusion.

{¶25} When applying an abuse of discretion standard, we cannot simply substitute our judgment for that of the trial court. In this case, both the magistrate's decision and the trial court's judgment entry overruling appellants' objections and adopting the magistrate's decision are well reasoned and supported by the record. Based on the record before us, we cannot say that the trial court acted unreasonably, arbitrarily or unconscionably in concluding that the magistrate's determination that appellants' representatives took Gibson's belongings from the storage locker was supported by a preponderance of the evidence. Appellants' second assignment of error is overruled.

**Exculpation from Liability under Lease**

{¶26} In their first assignment of error, appellants claim that paragraph 17 of the lease expressly exculpates them from liability for damage to Gibson's personal property and that the trial court, therefore, erred in imposing liability on them for Gibson's losses. Paragraph 17 of the lease states, in relevant part:

> Resident shall be responsible for all personal property stored or placed on the premises, including in storage lockers. Landlord shall not be liable for any loss or damage to Resident's property not due to Landlord's neglect or carelessness, nor shall landlord be liable for any act of negligence by any other Resident or other persons not under the Landlord's control. * * *

**{¶27}** This provision exculpates the landlord from liability for a tenant's property losses only where such losses are "not due to Landlord's neglect or carelessness." In this case, however — as detailed above — Gibson presented circumstantial evidence from which it could be reasonably concluded that her losses were caused by appellants' neglect or carelessness, i.e., appellants' removal of her belongings from her locker on the mistaken belief that they were the belongings of the tenants who had recently vacated unit 913. Accordingly, appellants' first assignment of error is meritless and is overruled.

**Duty to Investigate**

**{¶28}** In their third assignment of error, appellants contend that the trial court abused its discretion by finding that appellants had a "duty to investigate" what happened to Gibson's belongings. The trial court, however, found no such duty. To the contrary, when overruling appellants' similar objection to the magistrate's decision, the trial court expressly found that no "duty to investigate" had been imposed on appellants, explaining its determination as follows:

> In his decision, [the magistrate] did not "place a duty on Defendants to investigate" the theft of Plaintiff's property; rather, he considered the Defendant's failure to do so as a factor impacting the credibility of Defendant's witness. This was a proper consideration of credibility by the trier of fact, and shall remain undisturbed.

**{¶29}** Appellants' third assignment of error is overruled.

**Damages**

**{¶30}** In their fourth assignment of error, appellants argue that the trial court abused its discretion in determining that Gibson was entitled to $1,959 in damages.

Appellants contend that because Gibson "failed to testify or produce any receipts, advertisements or other objective information * * * showing the current value of the stolen belongings," her damages were "too speculative to give rise to recovery." Appellants also challenge the trial court's damages award on the grounds that Gibson testified that she "was not completely sure what exactly was missing" and "failed to offer any evidence as to the age and condition of the stolen belongings to properly value her damages." Appellants' arguments are meritless.

{¶31} A plaintiff need only prove his or her damages with "reasonable certainty." *Kavalec v. Ohio Express, Inc.*, 8th Dist. Cuyahoga No. 103410, 2016-Ohio-5925, ¶ 37. "[M]athematical certainty" is not required so long as there is evidence upon which to make a "reasonable estimate." *Madfan, Inc. v. Makris*, 8th Dist. Cuyahoga No. 103655, 2016-Ohio-7395, ¶ 45; *see also Jayashree Restaurants, L.L.C. v. DDR PTC Outparcel L.L.C.*, 10th Dist. Franklin No. 16AP-186, 2016-Ohio-5498, ¶ 14 ("'Damages are not rendered uncertain because they cannot be calculated with absolute exactness. It is sufficient if a reasonable basis of computation is afforded, although the result be only approximate.'"), quoting *Eastman Kodak Co. v. S. Photo Materials Co.*, 273 U.S. 359, 379, 47 S.Ct. 400, 71 L.Ed. 684 (1927). However, a damages award cannot be based on a mere "guesstimate," speculation or conjecture. *See, e.g., Kavalec* at ¶ 37.

{¶32} The measure of damages for injury to personal property is the difference in market value of the property immediately before and immediately after the injury. Where the property is totally destroyed, the measure of damages is the reasonable market

value of the property immediately before its destruction. *See, e.g., Outer Space Signs, L.L.C. v. Clagg*, 4th Dist. Jackson No. 12CA11, 2013-Ohio-4350, ¶ 7. Thus where, as here, personal property is wrongfully taken but never returned, a plaintiff is entitled to recover the market value of the property at the time it is taken.

{¶33} In this case, Gibson testified regarding a list she prepared in which she described the items or categories of items that were taken from her storage locker and estimated their value, which totaled $1,959. That list was introduced into evidence. Although Gibson indicated that there may have also been other items in the storage locker that she did not specifically recall, she did not include such items in her $1,959 valuation of her missing property. In the list, Gibson acknowledged the used condition of many of the items. As the trial court pointed out, "there is nothing in the record to suggest that she was offering the replacement price, instead of the value of the item[s] in [their] current age and condition." With respect to appellants' complaint that Gibson did not have receipts for many of the missing items, as the trial court noted, this did not prevent her from proving her damages:

> Defendants stress that Plaintiff did not have receipts for many items. Plaintiff acknowledged this, and the Court is aware that many people do not keep receipts for household items after the return period has passed. Pursuant to Ohio Evid.R. 401 the trier of fact is free to consider any relevant evidence; Plaintiff was not required to submit receipts to prevail on her claim. Plaintiff's list, containing valuations of common place belongings, is sufficient to meet her burden * * *.
> {¶34} "[W]ith respect to evidence of damages in small claims proceedings,

'estimates are almost always used to establish damages in small claims court.'" *Beardman v. Romeo Concrete*, 7th Dist. Mahoning No. 12 MA 186, 2013-Ohio-5553, ¶ 19, quoting

*Stull v. Budget Interior*, 7th Dist. Mahoning No. 02 BA 17, 2002-Ohio-5230, ¶ 22; *see also* Evid.R. 101(C)(8) (indicating that the rules of evidence do not apply to small claims proceedings); *Karnofel v. Watson*, 11th Dist. Trumbull No. 99-T-0052, 2000 Ohio App. LEXIS 2770, 5 (June 23, 2000) (noting that in small claims action, "the procedural rules are somewhat relaxed compared to a normal civil action" and "[p]arties are given a greater degree of latitude consistent with the purpose behind small claims actions"). Further, "Ohio law has long recognized" that an owner of personal property "is, by virtue of such ownership, competent to testify as to the market value of the property." *Smith v. Padgett*, 32 Ohio St.3d 344, 347, 513 N.E.2d 737 (1987). This is based on the assumption that the owner "'possess[es] sufficient acquaintanceship with it to estimate the value of the property.'" (Emphasis omitted.) *Id.*, quoting 22 Corpus Juris, Evidence, Section 685, at 586-587 (1920). Appellants had an opportunity to cross-examine Gibson regarding her list and claimed damages or to offer evidence of an alternative valuation for the items identified on the list but failed to do so.

{¶35} Moreover, the trial court noted that "only $1459.00 of the $1959.00 award was attributable to the lost property; $500.00 of the damages awarded was to compensate Plaintiff for suffering she experienced due to the invasion of her privacy." Appellants did not object to the magistrate's finding that Gibson sustained $500 in damages as a result of the invasion of her privacy and have not challenged the trial court's adoption of that amount on appeal.

**{¶36}** Following a thorough review of the record, we cannot say that the trial court abused its discretion in awarding Gibson $1,959 in damages. Appellants' fourth assignment of error is overruled.

**Violation of R.C. 5321.04(A)(7) and C.C.O. 375.06**

**{¶37}** In their fifth and final assignment of error, appellants challenge the trial court's determination that they violated R.C. 5321.04(A)(7) and C.C.O. 375.06. Appellants argue that the trial court abused its discretion in determining that they violated R.C. 5321.04(A)(7) and C.C.O. 375.06 because (1) Gibson never pled such a claim in her complaint or argued it at trial and (2) there was no evidence that appellants made any entry into her leased premises.

**{¶38}** Appellants never raised the argument that Gibson had failed to plead or argue a violation of R.C. 5321.04(A)(7) or C.C.O. 375.06 below. Accordingly, they have waived it. *See, e.g., Cleveland Town Ctr., L.L.C. v. Fin. Exchange Co. of Ohio, Inc.*, 8th Dist. Cuyahoga No. 104162, 2017-Ohio-384, ¶ 21 ("It is well established that a party cannot raise new arguments and legal issues for the first time on appeal, and that failure to raise an issue before the trial court results in waiver of that issue for appellate purposes."), citing *Bank of Am., N.A. v. Michko*, 8th Dist. Cuyahoga No. 101513, 2015-Ohio-3137, ¶ 28. "Although 'parties are given a greater degree of latitude consistent with the purpose behind small claims actions[,]' * * * they are not permitted to ignore established principles of appellate review." *Lovas v. Mullett*, 11th Dist. Geauga No. 2000-G-2289, 2001 Ohio App. LEXIS 2951, *8-9 (June 29, 2001), quoting *Karnofel*,

11th Dist. Trumbull No. 99-T-0052, 2000 Ohio App. LEXIS 2770, at *5. Even if we were to consider the issue, we would conclude that the allegations of the complaint were sufficient to give notice to appellants that Gibson was claiming that appellants unlawfully and unreasonably entered her storage unit. *Stull*, 7th Dist Mahoning No. 02 BA 17, 2002-Ohio-5230, at ¶ 11 (observing that "[t]he rules of civil procedure are relaxed * * * in small claims actions), citing *Feinstein v. Habitat Wallpaper & Blinds*, 8th Dist. Cuyahoga No. 67419, 1994 Ohio App. LEXIS 5771  (Dec. 22, 1994).

{¶39} Pursuant to R.C. 5321.04(A)(7), "[a] landlord who is a party to a rental agreement shall * * * [n]ot abuse the right of access conferred by division (B) of section 5321.05 of the Revised Code."  Under R.C. 5321.05(B), a landlord has a right:

> to enter into the dwelling unit in order to inspect the premises, make ordinary, necessary, or agreed repairs, decorations, alterations, or improvements, deliver parcels that are too large for the tenant's mail facilities, supply necessary or agreed services, or exhibit the dwelling unit to prospective or actual purchasers, mortgagees, tenants, workmen, or contractors.

Thus, R.C. 5321.04(A)(7) applies where a landlord abuses his or her right to enter a tenant's "dwelling unit."  R.C. 5321.01(F) defines "dwelling unit" as "a structure or the part of a structure that is used as a home, residence, or sleeping place by one person who maintains a household or by two or more persons who maintain a common household."

{¶40}  There has been no claim by Gibson that appellants abused any right of access to her "dwelling unit."  Giving the statute its plain and ordinary meaning, as we are required to do, Gibson's storage locker is not a "dwelling unit" or part of a "dwelling unit" as defined above.  *Compare* R.C. 5321.01(F) (defining "dwelling unit") with R.C.

5321.01(C) (defining "residential premises" as "a dwelling unit for residential use and occupancy and the structure of which it is a part, the facilities and appurtenances in it, and the grounds, areas, and facilities for the use of tenants generally or the use of which is promised the tenant"). Accordingly, we conclude that the trial court erred in determining that appellants violated R.C. 5321.04(A)(7) by unreasonably entering her storage locker.

{¶41} This error was, however, harmless because Gibson was not awarded any relief based on a violation of R.C. 5321.04(A)(7). *See* Civ.R. 61 ("[N]o error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."). As the magistrate's decision makes clear, the $500 that the trial court awarded Gibson for the invasion of her privacy was awarded pursuant to C.C.O. 375.06(b), based on appellants' violation of C.C.O. 375.06(a), not pursuant to R.C. 5321.05(B).

{¶42} C.C.O. 375.06 provides, in relevant part:

(a)  Except in the case of an emergency or if it is impracticable to do so, a landlord shall give a tenant reasonable notice of his or her intent to enter the leased premises and enter only at reasonable times. Twenty- four (24) hours is presumed to be reasonable notice in the absence of evidence to the contrary.

(b)  If a landlord makes an entry in violation of Section (a) hereof, makes a lawful entry in an unreasonable manner, or makes repeated demands for

entry otherwise lawful that have the effect of harassing the tenant, the tenant may:

(1) At the tenant's option, either recover actual damages resulting from the entry or demands, or recover damages of an amount not less than Fifty Dollars ($50.00) nor more than Five Hundred Dollars ($500.00) * * *

{¶43} Appellants argue that the trial court abused its discretion in determining they violated C.C.O. 375.06 because the storage lockers were not part of Gibson's "leased premises." Once again, we disagree.

{¶44} "Leased premises" as used in C.C.O. 375.06 is not defined. It was undisputed at trial that appellants provided the storage lockers specifically for use by the tenants. Gibson testified that, after she paid her deposit and received the keys to her apartment, the property manager told her that she could use any empty storage locker to store her belongings.

{¶45} Further, as appellants acknowledge in their brief (albeit when arguing their first assignment of error), the storage lockers were specifically identified in the lease as part of the leased "premises." Paragraph 17 of the lease states, in relevant part: "Resident shall be responsible for all personal property stored or placed *on the premises, including in storage lockers*." (Emphasis added.) Paragraph 36 of the lease similarly provides:

> UPON THE EXPIRATION OR EARLIER TERMINATION OF THIS LEASE, *ANY PROPERTY OF THE RESIDENT REMAINING IN THE PREMISES AFTER VACATION OF PREMISES* BY RESIDENT SHALL BE CONCLUSIVELY DEEMED TO HAVE BEEN ABANDONED BY THE RESIDENT, *INCLUDING PROPERTY IN STORAGE LOCKER,*

WHICH PROPERTY MAY BE DIRECTLY DISPOSED OF BY LANDLORD, WITHOUT LIABILITY TO LANDLORD AND WITHOUT NOTICE TO RESIDENT, WHICH NOTICE IS HEREBY EXPRESSLY WAIVED BY RESIDENT.

(Emphasis added.)

{¶46} Accordingly, the storage locker was properly considered part of the leased premises for purposes of finding a violation of C.C.O. 375.06. Appellants' fifth assignment of error is overruled.

{¶47} Judgment affirmed.

It is ordered that appellee recover from appellants the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cleveland Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

TIM McCORMACK, J., AND
FRANK D. CELEBREZZE, JR., J., CONCUR